73643. LINDSEY v. THE STATE.
(354 SE2d 650)

BIRDSONG, Chief Judge.

Keith Lindsey, the defendant, appeals his conviction of the offenses of armed robbery and possession of a firearm during the commission of a felony. On Friday evening, October 18, 1985, Andre Bradford, a student at Morehouse College, was returning to the college campus when he came up behind two men. One of the men turned around, pointed a pistol at him, demanded his wallet and told him not to run or he would shoot. Bradford said the robber was approximately five feet from him when he made the demand, but then approached him, "clicked" the pistol, pointed it at his head and reached inside his pocket and removed his wallet. The robber's com-

panion, who was wearing an earring in one ear, told the man with the gun he "should shoot him." The robber gave the victim "five seconds to run" and started a countdown. Bradford ran in one direction and the robbers ran in the opposite direction. Bradford reported the robbery to the campus security police. On Sunday morning, October 20th, a campus security officer came to his room and showed him one photograph and asked Bradford, "[d]o you know who this is?" Bradford identified the man in the photo as his robber. That afternoon Bradford was taken to the office of the campus security police and shown a line-up of photographs. He selected one of them as his robber. At that time the defendant was in the front office of the security police, but Bradford was in another section of the office. Following the second identification, Bradford and the defendant were transported to Atlanta Police headquarters in the same van. Bradford sat in the back and the defendant sat in the front and all Bradford could see of the defendant was the back of his head. When they entered the Robbery Division of the police station, Bradford pointed out the defendant to Detective Fulse and said, "definitely — the defendant did commit the crime." Lindsey appeals from the jury verdict of guilty of both counts. *Held*:

1. Defendant alleges that the Atlanta University security police had no "probable cause to stop the defendant for questioning and have [O]fficer Blackshear of Morehouse Security take a photograph of the defendant." At approximately 5:30 a.m. on the morning of October 20, 1985, Officer Revere was on routine patrol when he saw a car which matched the description of a vehicle described in a "look out" bulletin as having been seen previously in an area where some robberies had been reported. He saw two black males in the car and one of them had an earring. The car departed and Revere called for assistance. When Revere saw the same car approximately five minutes later, the defendant was on the sidewalk beside it. Officer Revere said he notified the Atlanta police but they could not identify defendant. Officer Blackshear, Morehouse security, testified that he was called on the morning of October 20 to photograph the defendant in the Atlanta University security office. Officer Revere asked Blackshear if Morehouse had any robberies recently, that he had "picked up a suspect and he wanted the students to try to identify him." After taking the photograph, Officer Blackshear examined his security records and found the report filed by Bradford. Bradford's description of his robber matched the description of the defendant so Officer Blackshear took the defendant's photograph to Bradford and asked him if he could identify the person. Bradford told him "that's the man."

We need not reach the issue of "probable cause" to arrest. Prior to trial, counsel for defendant filed a "Plea in Bar and Motion to Suppress Identification." The grounds stated in the motion were lack of

probable cause to arrest, unlawful detention, improper identification procedures, and deprivation of the right of counsel. Defendant demanded "that all evidence of identification of him by the accuser, as well as the others who were present at the time . . . be suppressed. . . ." At trial, counsel informed the court "the identification has to do with the show-up in the case. It was not a show-up. . . . there was only a photo line-up . . . showing first the photo of only the defendant and also a view from another room at an angle." Bradford testified that he first observed the one photograph shown to him in his room. That afternoon he went to the office of the security police and picked out the photograph of the robber from a group of pictures and he did not see the defendant while he was in the security office. Officer Ethel Yulee, Morehouse College Campus Police, conducted the photo show-up for Bradford. She testified, without objection: "We went down to the APD [Atlanta Police Department] office and got a picture of Mr. Lindsey and some other pictures out of the dead file . . . from twelve to fifteen," and asked Bradford to look at them and see if he could identify anyone. Bradford selected the photograph of Lindsey. The single photograph shown Bradford in his room and the group of photographs obtained from the Atlanta Police Department for the show-up in the campus security office were admitted in evidence without objection. At the conclusion of the evidence, counsel for defendant moved the "identification of [the defendant] by the accuser and the witnesses here today . . . be suppressed and that the accuser and all other persons . . . be prevented from identifying him at the trial of this case and that the indictment be dismissed."

In summary, defendant contends his detention was an arrest, that the arrest was illegal because it was without probable cause, and because the procedures used to identify him as the robber were in violation of his constitutional rights, his in-court identification should be prevented, the indictment dismissed, and his plea in bar of trial granted.

Under *Mapp v. Ohio*, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081), the sanction for an unconstitutional search is the exclusion of evidence obtained during the search. Similarly, the sanction for an unconstitutional arrest is exclusion of any evidence obtained during the arrest. *Lackey v. State*, 246 Ga. 331, 333 (271 SE2d 478). A plea in bar of prosecution is not an authorized sanction for an unconstitutional arrest. *Stallings v. Splain*, 253 U. S. 339, 343 (40 SC 537, 64 LE 940). Hence, an illegal arrest, without probable cause, does not require release of the accused (*United States v. Crews*, 445 U. S. 463 (100 SC 1244, 63 LE2d 537)), but does require suppression of any physical evidence thereby obtained (*Hayes v. Florida*, 470 U. S. 811 (105 SC 1643, 84 LE2d 705)). *Battle v. State*, 254 Ga. 666 (3) (333 SE2d 599). Thus, in the instant case, while it is arguable that the

photograph of the defendant taken after the alleged illegal arrest should be suppressed, the purported illegal arrest would not act as a plea in bar to the prosecution, nor would it prevent the in-court identification of the defendant where such identification is based on the events surrounding the incident itself, and not on events following the purported illegal arrest. *Jones v. State*, 238 Ga. 51 (1) (230 SE2d 865).

In the instant case, the testimony of Bradford at trial clearly showed that he based his in-court identification of the defendant upon the things he saw during the progress of the robbery. Bradford testified to the well-lighted area beside the church where he was robbed, that he "had face-to-face contact" with the defendant, and they were "about an inch apart," when the robber reached in his pocket and removed his wallet. The defendant's "face looked so vivid in my mind." "I had eye-to-eye contact with him for a few minutes. . . ." The witness was "positive" and had "[n]o doubt at all." Assuming arguendo an illegal arrest, it would not be a bar to prosecution (*Hamby v. State*, 173 Ga. App. 750 (328 SE2d 224); *Worley v. State*, 166 Ga. App. 794 (305 SE2d 485)), nor would it bar in-court identification where such identification is based on events surrounding the robbery (*Manson v. Brathwaite*, 432 U. S. 98 (97 SC 2243, 53 LE2d 140); *Code v. State*, 234 Ga. 90, 99 (214 SE2d 873); *Anthony v. State*, 160 Ga. App. 842, 844 (287 SE2d 686); *Tate v. State*, 153 Ga. App. 508, 509 (265 SE2d 818).

2. Defendant argues that the court erred "in not suppressing the out-of-court identification of the defendant and allowing testimony of the out-of-court identification during the in-court identification." Counsel contends the "display of a single photo is impermissibly suggestive . . . [and] [l]ater that afternoon the defendant and the victim were in the same room together and in fact transported to the City of Atlanta Police Department in the same vehicle. . . . Therefore, the defendant's in-court identification has been so tainted by the previous out-of-court identification, the in-court and out-of-court testimony should have been suppressed."

Bradford admitted that he had been shown one photo of the defendant in his room, but denied that he saw the defendant when he went to the campus security office to pick defendant's picture out of the photo show-up, and stated that all he could see of the defendant in the van on the ride to Atlanta Police headquarters was the back of his head.

Appellate courts continuously condemn one-on-one photo show-ups and confrontations between an accused and his accuser. *Anthony*, supra at 844. However, the occurrence of a one-on-one show-up, without more, does not necessarily require suppression of in-court identification. *Neil v. Biggers*, 409 U. S. 188, 198 (93 SC 375, 34 LE2d 401).

Nor is there a per-se exclusion of subsequent in-court identification because of suggestive pre-trial identification procedures or confrontations, for such "inflexible rules of exclusion . . . may frustrate rather than promote justice. . . ." *Manson,* supra at 113. The primary evil to be avoided is the "substantial likelihood of irreparable misidentification." *Coleman v. Alabama,* 399 U. S. 1 (90 SC 1999, 26 LE2d 387). Hence, "reliability is the linchpin in determining the admissibility of identification testimony" for pre-trial confrontations between a defendant and the State's witnesses. *Manson,* supra at 114. *Simmons v. United States,* 390 U. S. 377 (88 SC 967, 19 LE2d 1247), enunciated a two-part test. The first issue is whether the photographic display or confrontation was impermissibly suggestive. Only if it was unduly suggestive, need the court consider the second question — whether there was a "substantial likelihood of irreparable misidentification." Id. The factors to be considered in evaluating the likelihood of misidentification are: (1) the opportunity of the victim to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. *Gravitt v. State,* 239 Ga. 709, 711 (239 SE2d 149).

The victim had ample opportunity to view the defendant at the scene of the crime and the lighting was good. The witness' degree of attention was shown to be acute as the description he provided the police matched the man the police photographed the following Sunday morning. The accuracy of the victim's description is verified by the fact that the police immediately took the defendant's photo to the victim for verification. The level of certainty of the witness was the highest. The length of time between the crime and the photo show-up was a little more than one day. The totality of the circumstances was sufficient to persuade the trial court that the identification of the defendant had a source independent of the one photo show-up and the possible post-arrest confrontations between the victim and the defendant. We concur with the findings of the trial court and find no error in the procedure followed. *Burrell v. State,* 239 Ga. 792, 793 (239 SE2d 11); *Hobbs v. State,* 235 Ga. 8 (218 SE2d 769).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 2, 1987.

*Darel C. Mitchell,* for appellant.
*Lewis R. Slaton, District Attorney, Paul L. Howard, Jr., H. Al-*

*len Moye, Assistant District Attorneys*, for appellee.