A05A0164. HENDRIX v. THE STATE.
(616 SE2d 127)

RUFFIN, Chief Judge.

An Athens-Clarke County jury convicted William Hendrix of driving under the influence of drugs (DUI), obstructing a police officer, and violating the open container law. He appeals, arguing that the trial court should have granted his motion to suppress; that the trial court should have granted his motion for directed verdict on obstruction because there was no lawful arrest; and that the evidence was insufficient to support his DUI conviction. We disagree and affirm.

1. Hendrix contends the trial court should have suppressed methadone seized from his vehicle because the seizure occurred after his detention for possible DUI had concluded. According to Hendrix, the police had already decided there was no probable cause to arrest him for DUI when they asked him about the contents of a lockbox in his front seat, and, therefore, had no basis to conduct an additional investigation.

On appeal from the trial court's ruling on a motion to suppress, "if the facts are not disputed, we apply a de novo standard of review to the trial court's application of the law to the facts."[1] The uncontroverted evidence shows that on October 25, 2003, Officer Wright of the Athens-Clarke County Police Department noticed a vehicle stopped in the right turn lane of a busy road in Athens. The brake lights were on, and Hendrix was slumped over the steering wheel. Officer Wright stopped to check Hendrix, and Hendrix appeared to be asleep, with the vehicle in gear and his foot on the brake. There was a beer can

---

[1] (Punctuation omitted.) *State v. Godbolt,* 270 Ga. App. 190, 192 (606 SE2d 278) (2004).

turned over in the console of the vehicle. Officer Wright opened the vehicle door and tried to awaken Hendrix, but Hendrix did not respond. Officer Wright called Officer Walsh of the DUI Task Force to assist him.

After Officer Walsh arrived, Officer Wright reached into the vehicle, put it in park, and turned it off. Hendrix still did not awaken. Officer Walsh eventually woke Hendrix by shaking him. Hendrix seemed lethargic, dazed, and disoriented, and he thought he was in Atlanta.

Officer Walsh had Hendrix exit the car and perform field sobriety tests. Officer Walsh administered a horizontal gaze nystagmus test to Hendrix and noted six clues of intoxication. On the walk and turn test, Hendrix took the wrong number of steps, missed the heel-to-toe, and stepped off the line. Hendrix swayed on the one-leg stand, put his foot down, hopped, and fell back toward the vehicle. However, two different alco-sensor tests registered a low level of alcohol. At that point, Officer Walsh suspected that Hendrix was under the influence of drugs. Officer Walsh testified that, based on Hendrix's results, "I was thinking prescription meds at that time," and "I was convinced it was there; I just couldn't figure out which [drug] it was."

Officer Walsh told Hendrix that he was going to issue a ticket for the open container violation and take him to a nearby motel, since he could not drive in his condition. Officer Walsh was still undecided whether to arrest Hendrix for DUI; he testified, "I had to get the ticket [for the open container violation] written, and my mind was not closed, but my mind was almost made up, and . . . I was indecisive at that point." When asked if the investigation was over at that point, Officer Walsh testified that "[i]t would have been over once I released him on a citation. I hadn't released him on a citation yet."

Officer Walsh and Hendrix returned to Hendrix's vehicle to retrieve his driver's license. At the vehicle, Officer Walsh noticed a small metal lockbox on the front passenger seat. Officer Walsh testified that he "asked [Hendrix] what was in the box. He said medication. That's when some things started coming around in my mind, and so we went further with that line of questioning." Hendrix told Officer Walsh that it was the painkiller methadone. According to Officer Walsh, "[a]t that point it made perfect sense to me why I was seeing what I was seeing." Hendrix was arrested, and Officer Walsh opened the box and discovered six prescription bottles labeled methadone. Five were empty and one was unopened.

Hendrix moved to suppress the evidence. The trial court denied the motion, concluding that the officer's "inquiry into the contents of the lock box and [Hendrix's] response were both part of the original detention of [Hendrix] and investigation of driving under the influence."

An officer may briefly detain a suspect for continued investigation based upon reasonable suspicion; "[i]n fact, Georgia law recognizes three tiers of police-citizen encounters: (1) consensual encounters; (2) brief detentions that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause."[2] Here, the officers first approached the vehicle to check on Hendrix in a first-tier encounter, which required no suspicion of criminal activity.[3] Then, a valid second-tier encounter occurred, as the officers had reasonable suspicion to detain Hendrix when they found him asleep and unable to be roused at the wheel of his vehicle with it still in drive in the roadway, with an empty beer can next to him.[4]

A second-tier detention "must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification."[5] Continued questioning by a law enforcement officer after a detention has concluded, without reasonable suspicion of other criminal activity or consent, exceeds the scope of the detention and is impermissible.[6] Contrary to Hendrix's assertion, however, Officer Walsh had not concluded the DUI stop when he asked Hendrix about the lockbox. Thus, Officer Walsh was free to ask Hendrix additional questions to gather evidence of possible intoxication.[7] In general, a traffic stop ends when the officer finishes responding to the traffic violation and releases the motorist.[8] Officer Walsh told Hendrix that he intended to ticket him for an open container violation, but had not yet written the citation or released Hendrix.

Officer Walsh was undecided whether to cite Hendrix for DUI; he had seen evidence of Hendrix's intoxication and suspected Hendrix's state was caused by prescription medication. Officer Walsh's question when he noticed the lockbox was related to his investigation of possible DUI,[9] and did not impermissibly extend the scope or duration of the investigation beyond what was reasonable.[10] There is no

---

[2] (Footnote omitted.) *State v. Oliver*, 261 Ga. App. 599, 601 (583 SE2d 259) (2003).

[3] See *State v. Tollefson*, 259 Ga. App. 320, 322 (1) (b) (577 SE2d 21) (2003).

[4] See *In the Interest of A. A.*, 265 Ga. App. 369, 371-372 (1) (593 SE2d 891) (2004).

[5] (Citation and punctuation omitted.) *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004).

[6] See id.; *State v. Sims*, 248 Ga. App. 277, 279-280 (546 SE2d 47) (2001).

[7] See *State v. Beasley*, 270 Ga. App. 638, 640 (607 SE2d 245) (2004).

[8] See *Harris v. State*, 269 Ga. App. 48, 50-51 (603 SE2d 476) (2004).

[9] Compare *Faulkner v. State*, 256 Ga. App. 129, 131 (567 SE2d 754) (2002) (motion to suppress granted when officer searched vehicle after officer issued ticket for traveling in center lane and returned driver's license and insurance card to driver; search was unrelated to offense for which driver was stopped).

[10] See *Evans v. State*, 262 Ga. App. 712, 715-716 (1) (a) (586 SE2d 400) (2003).

evidence, as Hendrix argues, that Officer Walsh was trying to "trick" Hendrix or otherwise prolong his investigation by requesting Hendrix's license or asking about the box and its contents.[11] Accordingly, the trial court did not err in denying Hendrix's motion to suppress.[12]

2. Next, Hendrix argues the trial court erred by failing to grant his motion for directed verdict on the charge of obstructing a police officer. In a criminal case, the trial court should grant a directed verdict only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law.[13] In reviewing the denial of a motion for directed verdict, we view the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[14] "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[15]

Hendrix asserts that there was no probable cause for his arrest, and that his arrest was therefore unlawful. If an arrest is unlawful, then resistance to the arrest does not constitute obstruction.[16] In order to have probable cause to arrest a suspect for driving under the influence,

> an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence . . . to a degree which renders him incapable of driving safely.[17]

Here, Officer Walsh had probable cause to arrest Hendrix for DUI. Specifically, Hendrix was found asleep at the wheel of a vehicle in drive in the roadway; upon waking, he was disoriented; he failed several field sobriety tests, which the jury saw on videotape; and there were empty methadone bottles and an empty beer can in his car. Thus, Hendrix's arrest was lawful, and the trial court properly denied his motion for directed verdict.[18]

3. Finally, Hendrix contends that there was insufficient evidence to support his DUI conviction under OCGA § 40-6-391 (a) (2), which provides that "[a] person shall not drive or be in actual physical

---

[11] See *Oliver*, supra.

[12] See *Harris v. State*, 269 Ga. App. 48, 51 (603 SE2d 476) (2004).

[13] See *Davenport v. State*, 255 Ga. App. 593 (1) (565 SE2d 900) (2002).

[14] See id.

[15] (Punctuation omitted.) *Sexton v. State*, 269 Ga. App. 709, 710 (605 SE2d 103) (2004).

[16] See OCGA § 16-10-24 (a); *Long v. State*, 261 Ga. App. 478, 479 (1) (583 SE2d 158) (2003).

[17] (Punctuation omitted.) *Frederick v. State*, 270 Ga. App. 397 (606 SE2d 615) (2004).

[18] See *Penland v. State*, 258 Ga. App. 659, 660-661 (1) (574 SE2d 880) (2002).

control of any moving vehicle while . . . [u]nder the influence of any drug to the extent that it is less safe for the person to drive." Hendrix claims the trial court should have granted his motion for directed verdict because there was not sufficient evidence that he took any drug or was in control of a moving vehicle. We address each argument in turn.

(a) Hendrix argues that there was no evidence from which a rational trier of fact could conclude beyond a reasonable doubt that he was under the influence of a drug to the extent he was a less safe driver. Again, ample evidence supports the jury's conclusion that Hendrix was driving under the influence, including Officer Wright's testimony that he found Hendrix asleep at the wheel of a running car that was stopped in a turn lane. The jury also viewed the videotape of Hendrix at the scene, failing multiple field sobriety tests. Moreover, the officers found methadone and empty methadone bottles in the vehicle.

The state may show proof of impairment under OCGA § 40-6-391 (a) "by evidence of (i) erratic driving behavior, (ii) failure to pass field sobriety tests, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that [the drug] made it less safe for the defendant to drive."[19] The evidence was sufficient for the jury to find that Hendrix was intoxicated to the extent he was a less safe driver, even though he denied having taken the drug in his possession.[20]

The sole case Hendrix relies on, *Davis v. State*,[21] is distinguishable. In *Davis*, the DUI suspect was speeding and lost control of his car.[22] The only other evidence of intoxication was the testimony of two companions that he had drunk beer earlier in the evening and the testimony of the investigating officers that they smelled alcohol at the scene but could not trace the source.[23] The suspect's blood test was negative for drugs and alcohol.[24] We found this evidence insufficient to prove that the suspect was driving under the influence of alcohol to the extent he was a less safe driver.[25] Unlike the present case, there were no physical signs of intoxication, and no field sobriety tests were given.[26] Here, however, the trial court properly denied Hendrix's

---

[19] (Punctuation omitted.) *Bradshaw v. State*, 269 Ga. App. 97, 98 (603 SE2d 494) (2004); see also *Drogan v. State*, 272 Ga. App. 645 (1) (613 SE2d 195) (2005).

[20] See *Bradshaw*, supra.

[21] 206 Ga. App. 647 (426 SE2d 267) (1992).

[22] Id. at 648 (1).

[23] Id.

[24] Id. at 649.

[25] Id.

[26] See id.; compare *Duren v. State*, 252 Ga. App. 257, 260-261 (555 SE2d 913) (2001)

motion for directed verdict on the question of intoxication.[27]

(b) Hendrix also claims that there was no evidence from which a rational trier of fact could conclude beyond a reasonable doubt that he was in control of a moving vehicle. Hendrix argues that the state did not show that his vehicle moved "even an inch" in the presence of the officers. The officers need not have seen the vehicle move, however, to establish that Hendrix was driving.[28]

Again, Hendrix appeared to be asleep in the driver's seat of his vehicle with the engine running, in drive, with the lights on, and with his foot on the brake. There was no one else present. "Although the officer[s] did not see the car moving, [they] observed circumstances from which a jury could infer that [Hendrix] was in actual physical control of the car when it was moved to the location where the officer[s] found it, and that [Hendrix] was intoxicated while moving it there."[29] DUI may be proven by circumstantial evidence, and "[i]t is well settled that being found slumped over the steering wheel with the engine running constitutes such evidence."[30] There was sufficient evidence for the jury to conclude beyond a reasonable doubt that Hendrix was in control of a moving vehicle while intoxicated.[31] Thus, we affirm the trial court's denial of Hendrix's motion for directed verdict on this basis, as well.[32]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2005.

*Gordon & Brown, Gerald W. Brown, John H. Baker*, for appellant.

*Ralph W. Powell, Jr., Solicitor-General, Diana Slocumb, Assistant Solicitor-General*, for appellee.

---

(distinguishing *Davis* and other cases where there was no evidence of failed field sobriety tests).

[27] See *Goodson v. State*, 242 Ga. App. 167, 168-169 (3) (529 SE2d 175) (2000).

[28] See *Coates v. State*, 216 Ga. App. 93, 94 (1) (453 SE2d 35) (1994).

[29] (Punctuation omitted.) *Stephens v. State*, 271 Ga. App. 634, 635 (610 SE2d 613) (2005).

[30] *Schoolfield v. State*, 251 Ga. App. 52, 54 (1) (554 SE2d 181) (2001).

[31] See *Deering v. State*, 244 Ga. App. 30, 31-32 (1) (535 SE2d 4) (2000).

[32] See *Johnson v. State*, 194 Ga. App. 501, 502 (1) (391 SE2d 132) (1990).