A07A0331. FORD v. THE STATE.
(645 SE2d 590)

SMITH, Presiding Judge.

Following a bench trial, the trial court found Camille Lynette Ford guilty of prostitution and not guilty of pimping. She argues on appeal that the evidence was insufficient to support her conviction and that the trial court erred in (i) allowing the State to show the detective a book-in photograph which the State had not previously

disclosed to Ford through discovery and (ii) allowing a police detective to identify Ford after viewing the photograph. We disagree and affirm.

Viewed in the light most favorable to the verdict, the evidence demonstrates that on September 5, 2001, Atlanta police officers were investigating escort services. Detectives used the internet to identify an escort service and contacted the service by telephone; within 20 to 25 minutes Ford and Charise Reid knocked at the officers' room at the Super 8 Motel. Ford told the detective who answered the door that she was there to collect the $150 which had been agreed upon over the telephone. The detective asked her what the $150 would include. Ford answered straight sex and oral sex in exchange for $150. Reid told the detective that he could have sex with her as well for an additional $100. The detective gave $150 in marked bills to Ford, and she put the money in her purse. The women were arrested shortly after they entered the room. Ford and Reid were tried as co-defendants in 2003.[1]

1. Ford contends that the trial court erred in allowing an Atlanta police detective to identify her at trial after viewing a book-in photograph. We disagree.

The State's only witness was the Atlanta police detective who answered the door at the Super 8 Motel. The detective testified that although he knew that the defendants were the two women at the motel door, he could not tell which co-defendant was Reid and which was Ford. The prosecutor then attempted to show the detective a book-in photograph which the detective recognized as being part of the police file.

The defense attorney objected, arguing that the State had not provided the photograph to the defense through pretrial discovery and that if the detective could not identify the co-defendants in court then the State should not be allowed to identify them through "backdoor" means. After the trial court overruled the objection, the prosecutor showed the detective a single photograph with a name on the back.[2] The detective testified that after viewing the photograph he recalled the difference between the two defendants, and he identified which was Ford and which was Reid. On cross-examination, the detective confirmed that the photograph had refreshed his memory.

(a) Ford argues that the detective's identification testimony should have been excluded because the State effectively told the detective "this is defendant Ford and this is defendant Reid," leaving the detective's testimony without independent origin. We disagree.

---

[1] Reid was accused of prostitution and found not guilty.

[2] The photograph was not entered into evidence and is not part of the record.

The detective testified not to what the photograph showed, but as to his personal recollection as refreshed by the photograph. "OCGA § 24-9-69 permits a witness to refresh and assist his memory by the use of any written instrument or memorandum, and does not require the written document so used to have been prepared by the witness, so long as the witness testifies from personal recollection." (Citation and punctuation omitted.) *Woods v. State*, 269 Ga. 60, 62 (3) (495 SE2d 282) (1998). "As long as the witness is willing to swear from his memory as refreshed, his memory may be refreshed by any kind of stimulus, a song, or a face, or a newspaper item." (Citations and punctuation omitted.) *Croy v. State*, 168 Ga. App. 562, 564 (3) (309 SE2d 841) (1983).

The detective admitted on cross-examination that but for the photograph, he could not have identified the co-defendants by name, and "I would just know that those two females sitting at the table were the two females involved." However, OCGA § 24-9-69 "definitely allows oral testimony by a witness which the witness, absent the memorandum, would not be able otherwise to recollect." *State Hwy. Dept. v. Godfrey*, 118 Ga. App. 560-561 (1) (164 SE2d 340) (1968).

(b) Ford also contends that the detective's identification testimony should have been excluded because it constituted an impermissibly suggestive procedure leading to a substantial likelihood of irreparable misidentification. See *Lindsey v. State*, 182 Ga. App. 10, 14 (2) (354 SE2d 650) (1987) (in assessing exclusion of identification testimony, "primary evil to be avoided is the substantial likelihood of irreparable misidentification"). Again, we disagree.

In arguing that a substantial likelihood of irreparable misidentification existed here, Ford relies on cases which involve a pretrial identification procedure which the appellant contended tainted the witness's subsequent in-court identification. See, e.g., *Bates v. State*, 259 Ga. App. 232, 233-234 (2) (576 SE2d 619) (2003); *Mickel v. State*, 257 Ga. App. 421, 422 (2) (571 SE2d 439) (2002). However, "even if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citations omitted.) *Mickel*, supra. In this case, the detective's testimony established that he had an independent basis for his testimony through his close contact with Ford and Reid and, as discussed above, that he was testifying from his recollection and not from the photograph.

Furthermore, the allegedly improper identification procedure at issue occurred during the trial. As such,

> there were a number of safeguards not present in pre-trial identifications. The [detective]'s identification was conducted in the presence of counsel and the [trier of fact].

> Counsel had the opportunity to cross-examine the witness as to his identification, and the [trier of fact] could weigh the [detective]'s credibility.

*Horner v. State*, 257 Ga. App. 12, 17 (4) (570 SE2d 94) (2002). In addition, the detective was not a witness who used the photograph to identify a suspect for the first time, nor was the detective required to rely on the photograph to testify that the co-defendants were the two women he arrested at the Super 8 Motel. We conclude that the detective's use of a photograph to refresh his recollection as to which of the co-defendants was Ford and which was Reid went to the weight of the detective's testimony, but did not require that his identification of Ford be excluded due to a substantial likelihood of irreparable misidentification. See id. at 15-17 (4) (where witness could not identify defendant at trial due to change in defendant's personal appearance, allowing identification through witness's in-court viewing of booking photograph was not error); *State v. Arnot*, 724 SW2d 676, 679-680 (Mo. App. 1987) (not improper for detective to refresh his memory regarding his personal observation, arrest, and processing of defendant by viewing a police booking photograph).

2. Ford also claims that the trial court erred by allowing the State to show the detective a book-in photograph which had not been previously provided to her in accordance with the discovery rules. Again, we disagree. "The discovery provisions applicable to misdemeanor prosecutions are not the same as those applicable to felony prosecutions. In a misdemeanor case, the elective, optional mutual discovery provisions of OCGA § 17-16-1 et seq. are not available." (Citation, punctuation and footnotes omitted.) *Brooks v. State*, 267 Ga. App. 663, 664 (1) (600 SE2d 737) (2004). Book-in photographs are not among the discoverable material in misdemeanor cases, which include a copy of the indictment or accusation, a witness list if requested, in-custody statements, and written scientific reports. See OCGA §§ 17-16-20–17-16-23.[3]

3. Ford further contends that the evidence was insufficient to support her prostitution conviction. Once more, we disagree. "A person commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including but not limited to sexual intercourse or sodomy, for money or other items of value." OCGA § 16-6-9. Ford argues that while evidence may show she told the detective she was there to collect the previously agreed upon

---

[3] Ford has abandoned the argument made to the trial court that the book-in photograph was exculpatory and therefore discoverable under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

$150, Ford did not say she was going to perform a sex act. Given, however, that Reid indicated that she would have sex with the detective "as well" and that Ford accepted $150 after representing that the money constituted payment for "straight sex and oral sex," a rational trier of fact could conclude beyond a reasonable doubt that Ford had offered or consented to perform a sexual act for money. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED APRIL 13, 2007.

*Samia Giddings Randall*, for appellant.

*Carmen D. Smith, Solicitor-General, Oliver E. Murray, R. Leon Benham, Assistant Solicitors-General*, for appellee.