A07A0754. KELLER v. THE STATE.
(648 SE2d 714)

RUFFIN, Judge.

A jury found Gerald Keller guilty of driving under the influence and driving with an expired license. The trial court granted Keller's motion for an out-of-time appeal. On appeal, Keller, acting pro se, asserts eight enumerations of error. He challenges the sufficiency of the evidence and argues that the trial court erred in: denying his motion for recusal; denying motions to suppress; requiring him to proceed pro se without warning him of the risk; intimating an opinion as to his guilt; and failing to give certain jury charges. He also contends he received ineffective assistance from his trial counsel.[1] For reasons that follow, we affirm.

---

[1] Keller was initially represented at trial by counsel; he elected to proceed pro se during trial.

1. On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict.[2] The defendant no longer enjoys a presumption of innocence, and "we neither weigh the evidence nor assess witness credibility, but merely determine whether the evidence is sufficient to sustain the conviction."[3] So viewed, the record shows that in the early morning hours of January 22, 2005, a clerk at a gas station saw a vehicle enter the lot and park next to a gas pump. The vehicle remained parked next to the pump for between an hour and two hours. The clerk saw only the driver in the vehicle, and he never exited the vehicle. The driver appeared to be "slumped over" the steering wheel and was unresponsive when the clerk repeatedly attempted to speak to him through the two-way radio at the gas pump. Another gas station employee went out to the vehicle but was unable to get a response from the driver. The clerk then called 911.

Deputy Downey of the Cherokee County Sheriff's Department responded to the call. Deputy Downey approached the vehicle to determine whether there was a medical emergency — "to check on [the driver] and make sure he's breathing, make sure he didn't have a heart attack or something like that." He found Keller, the vehicle's only occupant, "slumped over against the steering wheel." After two or three attempts, he roused Keller, who was disoriented and unable to open the window. Deputy Downey asked Keller to open the vehicle's door; when Keller complied, Deputy Downey smelled alcohol. As Keller stepped out of the vehicle, "[h]e had to use the door to catch his balance," and Deputy Downey smelled alcohol on him. Keller admitted he had been drinking, and his speech was slurred.

When Deputy Downey asked Keller for his driver's license, Keller gave him his Visa check card. He subsequently produced an expired New Mexico driver's license. Deputy Downey asked Keller to walk to the front of the patrol vehicle, and Keller stumbled as he did so. When Deputy Downey asked Keller to perform field sobriety evaluations, Keller first agreed but then refused. He seemed confused, wondering why he was being asked to perform field sobriety tests and stating that he had not been sitting at the gas station for very long.

Deputy Downey placed Keller under arrest, read him the implied consent notice, and asked him to take a breath test. Keller agreed to take the test, and Deputy Downey placed him in the back of the patrol car. After speaking to another deputy, Deputy Downey returned to the vehicle, and Keller asked him why he had stopped him. Deputy Downey said, "You don't remember me coming up and you were

---

[2] See *Furlow v. State*, 276 Ga. App. 332 (1) (623 SE2d 186) (2005).
[3] Id.

asleep, you were passed out?" and Keller responded that he did not. Keller subsequently refused to take the breath test.

Keller argues that the evidence was insufficient to support his convictions because: (a) the State did not prove that he "was in actual physical control of a moving vehicle while under the influence of alcohol to the extent he was a less safe driver"; and (b) the State did not prove that he was driving without a valid driver's license. We disagree.

(a) Keller contends that the State failed to prove he actually operated his vehicle while intoxicated. He claims that "[t]he only reasonable inference that can be drawn from the record is that [Keller] pulled into the gas station parking lot and came to rest . . . more than four hours prior to contact by the investigating officers and four hours after actual physical control of a moving vehicle ended." Keller's argument thus appears to be that he became intoxicated after he parked the vehicle.

Driving while intoxicated may be proven by circumstantial evidence.[4] "[T]he evidence need not exclude *every* inference or hypothesis except the guilt of the accused, but only *reasonable* inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt."[5] Here, the gas station clerk saw Keller drive his vehicle from the public roadway into the parking lot, where he was found by police. Keller does not contest that he was intoxicated when Deputy Downey found him. This evidence, coupled with the fact that Keller never left the vehicle and was "slumped over" and unresponsive for a lengthy period of time before police arrived, was sufficient for a jury to conclude that Keller was intoxicated before arriving at the gas station and thus was in control of a moving vehicle while intoxicated.[6]

(b) At trial, Deputy Downey testified that Keller gave him a New Mexico driver's license that had expired on April 3, 2002, nearly three years earlier. No other evidence on this issue was presented. Keller asserts that, because the officer refreshed his recollection during direct examination from the original Uniform Traffic Citation he issued, the testimony is hearsay and therefore insufficient to support his conviction for driving with an expired license. While we agree that the Uniform Traffic Citation cannot be used as evidence of Keller's guilt,[7] "[a] witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally

---

[4] See id. at 333.

[5] (Punctuation omitted; emphasis in original.) Id. at 333-334.

[6] See id. at 334; *Hendrix v. State*, 273 Ga. App. 792, 797 (3) (b) (616 SE2d 127) (2005).

[7] See *Buckley v. State*, 246 Ga. App. 342 (540 SE2d 292) (2000).

speak from his recollection thus refreshed or shall be willing to swear positively from the paper."[8] Thus, an officer's sworn testimony after refreshing his recollection with a police report or other document is admissible as evidence.[9] And Keller's failure to produce a valid driver's license upon demand " 'gave rise to a rebuttable, reasonable inference that he did not have a valid license.' "[10] Accordingly, Deputy Downey's testimony was sufficient evidence for the jury to find Keller guilty of driving without a valid driver's license.[11]

2. Keller argues that the trial court erred in denying his motion for recusal of the trial judge. Before trial, Keller filed a motion for recusal in which he alleged the trial judge was biased against him based on Keller's previous appearances before the judge. The trial court denied the motion, finding the supporting affidavit legally insufficient. On the day the trial began, Keller's counsel argued that the motion should be granted, but the trial court declined to revisit the motion.

We review a ruling on a motion to recuse for abuse of discretion.[12] A motion to recuse must be accompanied by a supporting affidavit that "shall clearly state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons and circumstances of extra-judicial conduct or statements. . . ."[13] Here, Keller's affidavit did not set forth specific details of the basis for his claim of bias; rather, it referenced the motion to recuse and averred "[t]hat to the best of his recollection, [Keller] related the remarks by the Judge contained in the Motion to Recuse or similar remarks" and "[t]hat the trial records in each case referenced in the Motion to Recuse reveal verbatim statements by the judge."[14] While " 'all pleadings shall be so construed as to do substantial justice,' " Keller's affidavit stops far short of certifying that all facts in the motion to recuse are true and accurate to the best of his knowledge.[15] Most of the facts alleged in the motion are outside the ambit of Keller's limited affidavit. We therefore agree that this affidavit was legally insufficient to warrant recusal.[16]

---

[8] OCGA § 24-9-69.

[9] See *Ford v. State*, 285 Ga. App. 106, 107 (1) (a) (645 SE2d 590) (2007); *Becker v. State*, 280 Ga. App. 97, 99 (2) (633 SE2d 436) (2006).

[10] *Florence v. State*, 246 Ga. App. 479, 482 (10) (539 SE2d 901) (2000).

[11] See id.

[12] See *In the Interest of J. E. T.*, 269 Ga. App. 567, 570 (2) (604 SE2d 623) (2004).

[13] Uniform Superior Court Rules 25.1 and 25.2.

[14] It is also unclear whether the affidavit was properly notarized; it contains a signature and date of expiration of commission, but no notarial stamp is visible on the copy contained in the record. See *Johnson v. State*, 260 Ga. App. 413, 420 (4) (579 SE2d 809) (2003).

[15] *J. E. T.*, supra at 572.

[16] See *Rice v. Cannon*, 283 Ga. App. 438, 444 (2) (641 SE2d 562) (2007).

We further note that recusal is warranted only when the alleged bias is the product of an "extra-judicial" source and "[t]he fact that the judge has sat on prior cases of the party or ruled on prior matters in the case before the judge is legally insufficient as a ground for recusal."[17] As all of the allegations of bias in the motion to recuse arise from what Keller terms his "history" in the judge's courtroom and chambers, we conclude that it did not state facts which, if true, would have required recusal.[18] Moreover, none of the instances of "bias" alleged by Keller to have occurred during the trial are such that would require recusal. Thus, to the extent that Keller argues the judge should have recused himself sua sponte at trial, we find no merit to his claim.[19]

3. Keller contends that all evidence from his arrest should have been suppressed because Deputy Downey had no basis for suspecting him of criminal activity, and thus his detention was not justified. "On appeal from a denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling, and [that] court's application of law to undisputed facts is subject to de novo review."[20] There are three tiers of police-citizen encounters recognized in Georgia: police-citizen communications involving no coercion or detention; "brief seizures that must be supported by reasonable suspicion"; and "arrests that must be supported by probable cause."[21] "In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[22] Here, Deputy Downey's initial contact with Keller was a valid first-tier encounter, as he merely approached Keller and attempted to speak to him.[23]

Almost immediately, Deputy Downey realized that Keller was disoriented, smelled of alcohol, and unsteady on his feet. This gave him reasonable suspicion of criminal activity, escalating the contact to a valid second-tier encounter.[24] And Keller's subsequent actions provided probable cause for his eventual arrest.[25] Accordingly, the

---

[17] *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997); see *Rice*, supra at 443-444.

[18] See *Vaughn v. State*, 247 Ga. App. 368, 370 (2) (543 SE2d 429) (2000).

[19] See *Rice*, supra at 444.

[20] (Punctuation omitted.) *Moore v. State*, 281 Ga. App. 141, 142 (1) (635 SE2d 408) (2006).

[21] *Cutter v. State*, 274 Ga. App. 589, 591 (1) (617 SE2d 588) (2005).

[22] Id. at 591-592.

[23] See *Lucas v. State*, 284 Ga. App. 450, 452 (644 SE2d 302) (2007); *Hendrix*, supra at 792-793 (1).

[24] See *Hendrix*, supra at 794 (1).

[25] See id. at 795 (2); *Lewis v. State*, 276 Ga. App. 248, 249 (622 SE2d 912) (2005).

evidence obtained was not the result of wrongful detention, and the trial court did not err in denying Keller's motion to suppress evidence.[26]

4. Keller argues that the trial court should have suppressed evidence of his refusal to submit to field sobriety tests because he was in custody at the time and had not been read his *Miranda* rights, and because commenting on his failure to submit to the tests violated his constitutional right against self-incrimination. We address each argument in turn.

"*Miranda* warnings are not required while an investigating officer conducts preliminary questioning or field sobriety tests; however, after a DUI suspect is arrested, *Miranda* warnings must precede further field sobriety tests in order for evidence of the results to be admissible."[27] A suspect is in custody such that *Miranda* warnings are required if a reasonable person in the suspect's position would believe that his detention by police was not temporary.[28]

Keller asserts that, because Deputy Downey asked him to get out of the vehicle, did not return his driver's license, and told him that he was not going to be permitted to drive in his condition, he was in custody when asked to perform field sobriety tests. But these circumstances are more consistent with an ongoing investigation than an arrest, such that "a reasonable person could conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed."[29] The trial court did not err in denying Keller's motion to suppress on this ground.[30]

Keller also contends that the videotape of his refusal to perform field sobriety tests should be suppressed because Deputy Downey did not advise him of the adverse consequences associated with his refusal, and thus his constitutional right against self-incrimination was violated. This argument is also without merit, as it is well established that the admission of pre-arrest refusal to undergo a sobriety test does not violate the right against self-incrimination.[31]

5. Keller alleges that the trial court wrongfully required him to proceed pro se after he objected to trial counsel's representation of him. Keller initially represented himself in the case, filing multiple pleadings that included discovery requests, a speedy trial demand,

---

[26] See *Moore*, supra at 142-143.

[27] *Moody v. State*, 273 Ga. App. 670, 671 (1) (b) (615 SE2d 803) (2005).

[28] See *Amin v. State*, 283 Ga. App. 830, 831 (1) (643 SE2d 4) (2007).

[29] (Punctuation omitted.) *Abrahamson v. State*, 276 Ga. App. 584, 586 (623 SE2d 764) (2005).

[30] See id.; *Amin*, supra at 832-833.

[31] See *Keenan v. State*, 263 Ga. 569, 571 (2) (436 SE2d 475) (1993); *Long v. State*, 271 Ga. App. 565, 568 (2) (610 SE2d 74) (2005).

and motions to suppress. He hired counsel prior to trial, apparently after a discussion of the issue with the trial court. On the second day of trial, Keller fired his trial counsel and filed a written motion to dismiss him, outlining what he perceived to be trial counsel's ineffective assistance. Keller fired his trial counsel after his attorney informed him that he would be unable to offer a particular witness's testimony due to ethical concerns about the witness's veracity. Keller acknowledged that he knew his choice was to go forward with existing trial counsel or to represent himself. The trial court treated this as a waiver of the right to counsel; however, it appointed a different attorney to sit with Keller and assist him if necessary.

In order to show a waiver of the right to legal counsel, "[t]he record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[32] Here,

> [t]he trial court was authorized to find that [Keller] set forth no justifiable basis for dissatisfaction with [counsel] and, therefore, that he was attempting to use the discharge and appointment of other counsel as a dilatory tactic, which was the functional equivalent of a knowing and voluntary waiver of appointed counsel.[33]

Under these unique circumstances, where Keller originally represented himself, he petitioned the trial court in writing to remove trial counsel, he acknowledged that he knew his choices were to continue with trial counsel or represent himself, and standby counsel was appointed, we find no error in the trial court requiring Keller to proceed pro se.[34]

Moreover, " 'it is unlikely that [the] defendant's convictions were attributable to his decision to represent himself.' "[35] Keller did not elect to proceed pro se until the second day of trial; his trial counsel cross-examined the gas station clerk and Deputy Downey on the first day of trial. Keller cross-examined Deputy Downey when he was recalled, a deputy who arranged for his vehicle to be towed and a deputy who testified about a similar transaction. He engaged in an extensive closing argument and had second chair counsel available to

---

[32] (Punctuation omitted.) *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000).

[33] (Punctuation omitted.) Id.

[34] See id.; *Mondragon v. State*, 270 Ga. App. 780, 781 (607 SE2d 914) (2004).

[35] *Reviere v. State*, 231 Ga. App. 329, 331 (1) (498 SE2d 332) (1998).

assist him. We are unable to conclude that this self-representation affected the outcome of the trial, especially in light of the evidence of his guilt.[36]

6. Keller asserts that the trial court twice intimated an opinion as to his guilt, in violation of OCGA § 17-8-57. "To constitute an improper comment under OCGA § 17-8-57, the trial court's statement must express an opinion about whether the evidence has proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty."[37] Because Keller failed to object to the comments at trial, he is entitled to reversal "only if the trial court's comments seriously affected the fairness, integrity, and public reputation of these judicial proceedings."[38] Neither of the statements to which Keller objects meets this standard.

He first objects to the trial court's statement that, in pre-trial motions, "the Court has found nothing improper about the way in which the officers came in contact with [Keller]." This was merely a recitation of an earlier ruling and not an improper comment on Keller's guilt.[39] Keller also objects to a portion of the jury charge given on intent. After instructing the jury that the State was required to prove beyond a reasonable doubt that Keller "drove his vehicle[,] . . . intended to drive his vehicle, and that he drove it in the manner alleged in the accusation," the trial court stated that "[i]n addition . . . to the driving of the vehicle[,] being in physical control of the vehicle would also show necessary intent in this case." This was a statement of a legal standard rather than an intimation of guilt. Given that the jury was fully instructed as to the burden of proof, reasonable doubt, and that it was to make all factual and witness credibility determinations, we do not find that this statement "could have been taken by the jury as an expression or intimation of the court's opinion."[40] The trial court also charged the jury that its instructions were not intended as an expression of the Court's opinion.[41] Accordingly, we find this enumeration of error without merit.[42]

7. Keller objects to the trial court's failure to give three jury charges he requested and contends that the jury was not provided

---

[36] See id.

[37] (Punctuation omitted.) *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006).

[38] (Punctuation omitted.) *Bolden v. State*, 281 Ga. App. 258, 259 (2) (636 SE2d 29) (2006).

[39] See id. at 260; *Goode v. State*, 171 Ga. App. 901, 902 (2) (321 SE2d 410) (1984) (" '[R]emarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.' ").

[40] *Alexander v. State*, 180 Ga. App. 640, 642 (2) (350 SE2d 284) (1986).

[41] See id.

[42] See id.

with proper guidelines for determining guilt or innocence. Pretermitting whether Keller properly preserved his objections, we find no reversible error, as "[i]t is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles."[43] Here, the three charges Keller proposed addressed: witness testimony; the voluntary nature of field sobriety tests; and that the refusal to submit to a chemical sobriety test, standing alone, does not establish that a person was under the influence of alcohol. Regardless of whether the charges proposed by Keller were correct statements of the law, we find that the jury instructions given by the trial court, using the language of the pattern jury instructions, adequately addressed the correct legal principles on these topics and provided proper guidance to the jury.[44]

8. Keller argues that he received ineffective assistance of counsel because trial counsel failed to renew a motion for mistrial after the motion was denied and curative instructions were given. In general, when an ineffectiveness claim is raised for the first time on appeal, we remand the case for an evidentiary hearing in the trial court.[45] We need not do so, however, if we can determine from the record that there was no ineffective assistance.[46] Here, we have reviewed the trial transcript and find no basis for Keller's ineffective assistance claim.

In order to demonstrate ineffective assistance of counsel, Keller must show "that counsel's performance was deficient and that the deficient performance so prejudiced [Keller] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[47] The record reflects that Deputy Downey began to relate remarks Keller made to him while being transported to the detention center after the in-vehicle videotape recorder had been stopped. Deputy Downey testified that Keller said he "wasn't worried about getting a DUI, that he had beat deputies in Cherokee County before[,] and that . . . [he would] beat [Deputy Downey] the same way."

Trial counsel objected to the testimony and moved for a mistrial; after a hearing, the trial court sustained the objection, denied the mistrial, and gave curative instructions to the jury. The trial court told the jury "we have already reviewed a videotape here of what we thought were the full contents of the statements that were made at the time, and you can confine your consideration of comments to

---

[43] (Punctuation omitted.) *Brown v. State*, 268 Ga. App. 629, 633 (2) (602 SE2d 158) (2004).

[44] See *Greene v. State*, 278 Ga. App. 848, 850 (2) (630 SE2d 123) (2006).

[45] See *Stuart v. State*, 274 Ga. App. 120, 121 (616 SE2d 855) (2005).

[46] See id.

[47] *Sims v. State*, 278 Ga. 587, 589 (3) (604 SE2d 799) (2004).

what's shown on the video when [that is] displayed to you." Trial counsel did not renew his request for a mistrial after the curative instructions were given.

Keller simply cannot show a reasonable likelihood that the outcome of the trial would have been different if trial counsel had renewed the motion for a mistrial. When prejudicial testimony is introduced, "a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial."[48] The trial court must decide if the prejudicial effect of the testimony can be corrected with proper instructions, or if a mistrial is required.[49] If curative instructions are given and they adequately preserve the defendant's right to a fair trial, no mistrial need be granted.[50] Here, the trial court's curative instructions were sufficient and, thus, renewing the motion for mistrial would have been fruitless.[51] And failure to urge a meritless motion does not constitute ineffective assistance of counsel.[52] As a result, Keller's claim of ineffective assistance of counsel fails.[53]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JUNE 28, 2007 —
RECONSIDERATION DENIED JULY 5, 2007 — 

Gerald W. Keller, *pro se.*

*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Assistant Solicitor-General,* for appellee.

---

[48] (Punctuation omitted.) *Freeman v. State*, 278 Ga. 349, 351 (2) (c) (603 SE2d 214) (2004).
[49] See id.
[50] See id.
[51] See *Glass v. State*, 255 Ga. App. 390, 396 (6), 404 (10) (h) (565 SE2d 500) (2002).
[52] See *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).
[53] *Freeman*, supra.