## A09A2400. MILLER v. THE STATE.
### (692 SE2d 677)

DOYLE, Judge.

Following a jury trial, Dirk Elliott Miller was convicted of two counts of criminal attempt to commit armed robbery.[1] He appeals, arguing that the trial court erred by: (1) proceeding with pretrial motions when Miller was not represented by counsel; (2) denying his motion to sever the offenses; and (3) denying his motion to suppress. We affirm, for reasons that follow.

Viewed in favor of the verdict,[2] the evidence shows that on July 21, 2006, a black male entered Juanita's Party Supplies in Gwinnett County, where Amadys Munoz, the owner, was working. After all of the other customers left the store, the man approached Munoz, pointed toward the cash register, and yelled at her to open it. The man's hand and what Munoz believed was a gun were covered with a white shirt. Munoz pretended that she was going to open the register and then screamed at her daughter — who was standing near the entrance — to run and get help. The man pushed Munoz and then began beating the cash register. When the cash register would not open, the man ran out of the store. Afterward, Munoz told the police that the suspect was wearing a white t-shirt, blue shorts, and white Nike shoes with a green logo.

On July 27, 2006, Erica Gonzalez was working alone in the Dollar Party store in Gwinnett County when a black male approached the cash register with a white towel draped over his hand and what Gonzalez believed was a gun. The man pointed the gun

---

officer); *Johnson v. State*, 283 Ga. App. 425, 425-426 (1) (641 SE2d 655) (2007) (possession of cocaine).

[11] See *Waller*, 267 Ga. App. at 608.

[1] OCGA §§ 16-4-1; 16-8-41 (a).

[2] See *Robinson v. State*, 276 Ga. App. 502 (1) (623 SE2d 711) (2005).

toward Gonzalez and commanded her to open the cash register. Gonzalez told the man several times that she was unable to do so, and he attempted to open it himself. When he could not open the register, the man said, "F—k you," to Gonzalez and then left the store. The police were called, and Gonzalez told them that the suspect was wearing blue shorts, a white tank top, and green and white shoes.

On July 25, 2006, Officer Christopher Massey of the Norcross Police Department received a BOLO ("be on the lookout") call for a black male wearing a white shirt, blue shorts, and green and white shoes.[3] Officer Massey spoke with Miller the same day, who gave him his identifying information and told Officer Massey that he was staying at the Red Roof Inn; Miller was not arrested that day. After the July 27 incident at the Dollar Party store, Officer Massey reviewed the surveillance tape of the attempted robbery, and he recognized Miller as the assailant. Officer Massey went to the Red Roof Inn, which was within walking distance of the Dollar Party store, and knocked on Miller's door. When Miller — who was wearing blue shorts and no shirt — answered the door, the police asked for permission to enter the room, and Miller consented. From the doorway, Officer Massey saw a pair of green and white shoes on the floor and clothing, including a white t-shirt and blue jeans, toward the back of the room. The police arrested Miller for the criminal attempt to commit armed robbery of the Dollar Party store and transported him to the detention center.

Thereafter, the Norcross Police Department contacted Corporal Shelly Milsap of the Gwinnett County Police Department, who was investigating the July 21 attempted robbery of the Juanita's Party Supplies store, and advised Corporal Milsap that they had a suspect in custody who matched the description of the suspect from the Juanita's Party Supplies attempted robbery. Corporal Milsap went to the detention center, identified Miller, and then presented Munoz with a photographic lineup containing Miller's photograph. Munoz selected Miller from the lineup as her assailant.

Miller was charged with two counts of criminal attempt to commit armed robbery. At trial, both Munoz and Gonzalez[4] identified Miller as their assailant. Munoz's daughter, who was present during the July 21 incident, also identified Miller as the assailant. Munoz's daughter and Gonzalez identified the clothing taken from Miller's

---

[3] According to Officer Massey, the call was "either a domestic call or a suspicious person call with a person with a gun."

[4] Gonzalez was also shown a photographic lineup that contained Miller's picture, but she was unable to identify her assailant therein. She identified Miller after she watched the surveillance tape of the July 27 attempted robbery at trial.

hotel room as the clothing worn by their assailant. The jury also viewed the surveillance recording from the July 27 robbery and found Miller guilty of both counts of the indictment.

1. Miller argues that the trial court erred in conducting a hearing on his pretrial motions when he was not represented by counsel. We find this argument unpersuasive.

Miller was appointed counsel following his July 2006 arrest.[5] In February 2007, Miller filed an application for appointed counsel stating: "Have not seen my attorney[;] not responding to phone call or letters[;] tell me that she don't [know] nothing[;] putting in request for motion and not doing it; doing things without me knowing and permission." The trial court conducted a hearing on April 10, 2007, in response to Miller's application, and Miller told the court that trial counsel did not sufficiently communicate with him and that he did not believe that she knew enough about his case. After hearing from Miller, the trial court denied his request for substitute appointed counsel, but advised Miller that he was free to hire his own lawyer.

At a subsequent hearing held on July 30, 2007, Miller again expressed his dissatisfaction with counsel, and the trial court concluded that the disputes were caused by Miller and denied his request to appoint another lawyer. Miller then told the court that he wished to proceed pro se. After the trial court repeatedly warned him of the dangers of doing so and then questioned Miller about his knowledge of various aspects of his case, including discovery, possible defenses, hearsay, and sentencing (including the recidivist notice served by the State), the trial court ultimately permitted Miller to proceed pro se. The trial court again discussed with Miller his constitutional right to counsel, the dangers of self-representation, and various aspects of the case at a subsequent hearing held on August 14, 2007, where Miller again insisted that he wished to proceed pro se.[6]

At a September 4, 2007 calendar call, the trial court again discussed Miller's case with him, including available defenses, the indictment, Miller's right to challenge the reliability of identification, and his pretrial motions. The trial court also advised Miller that "I'm here telling you that I will consider appointing to you another lawyer because I think personally it's a mistake to represent yourself, and I don't say you, in particular. I would say that to anybody and have said that to other defendants. But that notwithstanding,

---

[5] Counsel represented Miller at an August 4, 2006 preliminary hearing.

[6] The trial court ordered at the hearing that the State give Miller advance notice of the hearing date for his pretrial motions and that Miller be permitted additional time at the jail library.

you still would rather do this yourself?'' Miller responded affirmatively. At the subsequent pretrial motions hearing held on October 11, 2007, the trial court asked Miller yet again whether he wished to proceed pro se at the hearing, and Miller replied that he did. The trial court also offered to appoint standby counsel for the upcoming trial, and Miller agreed.

"In order to show a waiver of the right to legal counsel, the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[7] Here, the trial court was authorized to refuse to appoint substitute counsel after it concluded that Miller had no justifiable basis for dissatisfaction with counsel.[8] And Miller knew that his choices were to continue with appointed counsel or to proceed pro se, and he elected to represent himself. Even more importantly, however, the trial court repeatedly warned Miller of the dangers inherent in self-representation, discussed various aspects of Miller's case with him, and even offered to appoint counsel for the pretrial motions hearing. Under all the circumstances, we conclude that Miller knowingly and intelligently waived his right to counsel after he was made aware of the dangers of self-representation.[9]

Moreover, as explained in Divisions 2 and 3, infra, Miller's pretrial motions to sever and to suppress were without merit. And given the evidence presented, including the surveillance footage of the attempted robbery and the victims' identifications of Miller, "it is unlikely that the defendant's convictions were attributable to his decision to represent himself."[10] Thus, "[w]e are unable to conclude that this self-representation affected the outcome of the trial, especially in light of the evidence of his guilt."[11]

2. Miller further contends that the trial court abused its discretion in denying his motion to sever the offenses for trial. We disagree.

In Georgia, "because of the great risk of prejudice from the joint disposition of unrelated charges, a defendant has a right to have offenses severed for trial where the offenses have been joined solely on the ground that they are of the same or similar character."[12]

> The absolute right to severance exists only where offenses have been joined solely because they are of the same or similar character. Where, however, as here, joinder is based

---

[7] (Punctuation omitted.) *Keller v. State*, 286 Ga. App. 292, 298 (5) (648 SE2d 714) (2007).

[8] See id.

[9] See id.; *Mondragon v. State*, 270 Ga. App. 780, 781 (607 SE2d 914) (2004).

[10] (Punctuation omitted.) *Keller*, 286 Ga. App. at 298 (5).

[11] Id. at 299 (5).

[12] *Carter v. State*, 261 Ga. 344 (1) (404 SE2d 432) (1991).

on a series of acts connected together, severance lies within the sound discretion of the trial court. The trial court should sever the offenses if severance is appropriate to promote a fair determination of guilt or innocence as to each offense.[13]

Here, the charges constituted a series of connected acts. Miller committed both attempted armed robberies by approaching cashiers at party supply stores and pointing what appeared to be a gun covered with a white shirt. Miller wore the same clothing in both crimes, which were committed within a week of each other in the same area. Under these circumstances, Miller "was not automatically entitled to a severance."[14] Accordingly, the trial court did not abuse its discretion in denying the motion to sever the offenses.[15]

3. In his final enumeration, Miller contends that the trial court erred in denying his motion to suppress on the ground that the clothing and shoes seized from his hotel room were the result of an illegal warrantless arrest. This argument is without merit.

"Upon review of a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the trial court's findings and judgment."[16] We accept a trial court's findings of fact and credibility determinations unless clearly erroneous.[17]

A warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.[18]

Here, the police had probable cause to arrest Miller. Officer Massey reviewed the surveillance footage of one of the attempted robberies and identified Miller, whom he had spoken to days earlier, as the assailant. Officer Massey also knew that Miller was staying at a hotel within walking distance of one of the crimes. We find that

---

[13] (Punctuation omitted.) *Fields v. State*, 283 Ga. App. 208, 210 (1) (a) (641 SE2d 218) (2007).

[14] Id.

[15] See *Savage v. State*, 298 Ga. App. 350, 355 (4) (679 SE2d 734) (2009); *Fields*, 283 Ga. App. at 210 (1) (a).

[16] *Souder v. State*, 301 Ga. App. 348, 349 (1) (687 SE2d 594) (2009).

[17] See id.

[18] (Punctuation omitted.) *Brown v. State*, 262 Ga. 728, 729 (2) (a) (425 SE2d 856) (1993).

these facts establish sufficient probable cause to support Miller's arrest.[19] Because the police were lawfully in Miller's hotel room based on his consent and the clothing and shoes were in plain view and recognizable as evidence, the officers lawfully seized the evidence at issue.[20] It follows that the trial court did not err in denying Miller's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 18, 2010 

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, Karen M. Harris, Assistant District Attorney*, for appellee.

---

[19] See *Souder*, 301 Ga. App. at 350 (1); *Baker v. State*, 295 Ga. App. 162, 165 (1) (a) (671 SE2d 206) (2008); *Robinson*, 276 Ga. App. at 504 (2).

[20] See *Lindsey v. State*, 247 Ga. App. 166, 169 (1) (543 SE2d 117) (2000) ("An officer who is lawfully in a place and sees in plain view evidence relating to a crime, or instrumentalities of a crime, may seize that evidence. The important question is whether the officer was lawfully in the [room] when he seized the evidence.") (punctuation omitted).