## A06A2013. GILES v. THE STATE.
### (642 SE2d 921)

BERNES, Judge.

Following a bench trial, Eliceo Salgado Giles was convicted of trafficking in cocaine in violation of the Georgia Controlled Substances Act. Giles appeals, challenging the trial court's denial of his motion to suppress and the sufficiency of the evidence against him. We affirm.

1. Giles first contends that the trial court erred in denying his motion to suppress. "On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. Furthermore, the trial court's application of law to facts which are undisputed is subject to de novo review." (Citations and footnote omitted.) *Jones v. State*, 253 Ga. App. 870 (560 SE2d 749) (2002). The trial court's findings should not be disturbed if there is any evidence to support them, and its credibility determinations must be accepted unless clearly erroneous. *Perez v. State*, 249 Ga. App. 399, 399-400 (547 SE2d 699) (2001).

So viewed, the evidence shows that on the morning of October 4, 2002, Trooper Van Scoten of the Georgia State Patrol observed Giles' car weaving as it traveled on Interstate 20 eastbound. Trooper Van Scoten ran the tag registration on Giles' car, and learned that the tag was expired. He consequently initiated a traffic stop to investigate the tag on the car and to determine whether Giles was impaired.

Giles was extremely nervous throughout the stop, and his hands were trembling and his carotid artery was pulsating heavily. In an effort to determine whether Giles' erratic driving was the result of

some impairment, Trooper Van Scoten questioned Giles regarding his travel itinerary and destination to determine how long he had been driving and whether he was too tired to continue. Giles responded that he had been driving all night from Houston to Atlanta to see his sister, who was having a baby. Yet, when queried further, Giles did not know his sister's delivery due date. The trooper found it odd that Giles would have driven all night to reach Atlanta as quickly as possible to visit his sister who was having a baby when "he didn't know when she was having it." Trooper Van Scoten also observed that Giles only "had one little duffle bag and a couple of hang-up shirts on the backseat which didn't seem to be enough luggage for two weeks."

To explain the expired car tag, Giles told Trooper Van Scoten that he had recently purchased the car and that the temporary tag had fallen from the back window. He gave the trooper a bill of sale and paperwork from a Toyota dealership in Houston, Texas, which indicated that he purchased the car for $6,500 cash three days prior to the stop. Trooper Van Scoten ran Giles' driver's license and vehicle registration on the HIDTA federally funded drug intelligence system, which failed to show that Giles was the owner of the car. He returned Giles' license and paperwork and decided not to issue traffic citations for either the weaving or tag violations. After returning these items, Trooper Van Scoten questioned Giles for a couple more minutes and ultimately obtained his consent to search the vehicle, resulting in the discovery of cocaine.

Trooper Van Scoten had decided to briefly continue questioning Giles after returning his license and vehicle paperwork based on certain suspicions he had about Giles' story. Specifically, Trooper Van Scoten, who had 20 years of law enforcement experience and between 200 and 300 hours of interdiction training, believed that there were several "red flag" indicators that Giles was engaged in drug smuggling criminal activity. These indicators included: (1) Giles' extreme nervousness throughout the traffic stop; (2) the inconsistencies in Giles' story about why he was traveling to Atlanta, including the fact that he did not know his pregnant sister's delivery due date and appeared to have insufficient luggage for a two-week trip; (3) the trooper's training and knowledge that Interstate 20 was a known drug route, that Houston was a known drug source, and that Atlanta was a known destination source for drugs; and (4) the trooper's training and knowledge that the purchase of a vehicle just prior to a trip was a recurring circumstance prevalent in drug smuggling and seizure cases.

In light of these indicators, Trooper Van Scoten had further inquired as to Giles' travel itinerary and prior arrest history upon returning his license and vehicle paperwork. In response to this subsequent questioning, Giles could not inform the trooper of the

exact address of his destination. Moreover, while the HIDTA check indicated that Giles had a prior misdemeanor arrest, Giles falsely stated that he had never been arrested before. Based upon these additional circumstances, Trooper Van Scoten asked Giles for consent to search the car. Although the trooper informed Giles that he was not obligated to do so, Giles nonetheless said that he understood and consented to the search, stating, "that's fine, go ahead." During the search, Trooper Van Scoten discovered six pounds of cocaine hidden in an altered battery compartment rigged under the hood of Giles' car, which led to Giles' arrest. All in all, the police encounter lasted for approximately twenty-one minutes, with approximately two minutes elapsing between when Trooper Van Scoten returned Giles' license and vehicle paperwork and when he obtained consent to search the vehicle.

Giles subsequently filed a motion to suppress the cocaine evidence seized from his vehicle, claiming that his Fourth Amendment rights had been violated by what he claimed was his illegally prolonged detention by Trooper Van Scoten. His motion was denied by the trial court.

> The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances. To pass muster under the Fourth Amendment, a law enforcement officer's continued questioning of a vehicle's driver and passengers outside the scope of a valid traffic stop is limited to when the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter.

(Citations and punctuation omitted.) *State v. McMichael*, 276 Ga. App. 735, 736-737 (1) (624 SE2d 212) (2005).

Giles does not challenge the validity of the initial traffic stop, and the state does not argue that the traffic stop had de-escalated into a consensual encounter. Thus, the sole issue on appeal is whether Trooper Van Scoten had a reasonable articulable suspicion of criminal activity to justify his continued detention and brief questioning of Giles after the initial traffic stop had ended. We conclude that he did.

> [A]rticulable suspicion that the law has been or is about to be violated is less than probable cause, but greater than mere caprice. What is necessary is a founded suspicion, some basis from which the court can determine that the detention

was not arbitrary or harassing. Thus, in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investigatory detention.

(Citations and punctuation omitted.) *Garmon v. State*, 271 Ga. 673, 677 (2) (524 SE2d 211) (1999). "To determine whether a reasonable articulable suspicion exists, courts must look to the totality of the circumstances." *Evans v. State*, 262 Ga. App. 712, 716 (1) (b) (586 SE2d 400) (2003). Notably, the totality of the circumstances includes information available to an officer concerning "the modes or patterns of operation of certain kinds of lawbreakers. From [such] data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person." Id.

Here, the record reflects that the initial traffic stop concluded after Trooper Van Scoten received the results of the HIDTA check and returned Giles' license and vehicle paperwork.[1] After the initial stop concluded, Trooper Van Scoten briefly questioned Giles regarding his travel itinerary and prior arrest history, resulting in the trooper gaining consent to conduct a vehicle search. At the motion to suppress hearing, Trooper Van Scoten explained that his continued questioning was based upon his observations of the "red flag" indicators detailed above.

Based on this record, we conclude that the trial court was authorized to find that under the totality of the circumstances, Trooper Van Scoten had the requisite articulable suspicion to continue questioning Giles. "While [Giles'] conduct may be susceptible to an innocent explanation, [according to the trooper's specialized training and knowledge] it is also consistent with illegal activity." *Evans*, 262 Ga. App. at 716 (1) (b). Trooper Van Scoten's extensive interdiction training and knowledge of drug smuggling patterns, combined with his objective observations indicating criminal activity in accordance with those patterns, provided him with reasonable articulable

---

[1] Giles also appears to argue that Trooper Van Scoten's decision to run his license and registration on the federal HIDTA system unreasonably expanded the initial traffic stop. However,

> [w]e have recognized that it does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.

(Citations omitted.) *State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003). Thus, a traffic stop is not unreasonably expanded when an officer runs a computer check on the driver's license and registration or performs a computer search for outstanding warrants. See id. It follows that Trooper Van Scoten's use of the HIDTA system did not expand the initial traffic stop in an unreasonable manner.

suspicion to further question Giles and detain him following the lawful traffic stop. See *Jones*, 253 Ga. App. at 873; *Perez*, 249 Ga. App. at 402-403 (3). The trial court's denial of Giles' motion to suppress thus was not erroneous.

2. Giles further contends that the evidence was insufficient to authorize his conviction. Giles admits that cocaine was found in a hidden compartment in the car that he owned and was driving. He nevertheless argues that the previous owner had "equal access" to the car and that the circumstantial evidence therefore showed a reasonable hypothesis other than his guilt.

We need not address this claim since Giles waived the issue in the court below. When the case was called for trial, Giles and the prosecutor requested a stipulated bench trial. Giles' counsel stated that the defense only objected to the state's evidence based on the reasons set forth in the motion to suppress, and specifically informed the trial court that, "[o]ur only issue is the issue of law on the Motion to Suppress. Beyond that[,] being as this defendant was the sole occupant of the vehicle that was pulled over and stopped, no reason of defense other than the suppression issue." Giles then expressed his agreement with his counsel's representation on the record. Accordingly,

[t]he defense attorney made it clear to both the prosecuting attorney and the trial judge that her main goal in defending this case was to preserve for appeal the denial of defendant's motion to suppress. Defense counsel led the trial court to believe she conceded that the State had otherwise met its burden of proof. Defendant thus waived his right to challenge the sufficiency of the evidence . . . of the crimes charged.

*Scott v. State*, 201 Ga. App. 162, 163 (1) (410 SE2d 362) (1991). See also *Sanders v. State*, 252 Ga. App. 609, 612-617 (2) (556 SE2d 505) (2001).[2]

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 7, 2007 —

*Zell & Zell, Rodney S. Zell*, for appellant.

---

[2] In any event, Giles failed to present any evidence to support his equal access claim. See *Cochran v. State*, 190 Ga. App. 884, 885 (1) (380 SE2d 319) (1989) ("To make an affirmative showing of equal access, it is not enough to show that others might have had equal access but it must affirmatively appear that others did have equal access.") (citation and punctuation omitted).

*David McDade, District Attorney, William H. McClain, James A. Dooley, Assistant District Attorneys*, for appellee.