A07A1287. LANE v. THE STATE.
(651 SE2d 798)

MIKELL, Judge.

Ozell Lane, Jr., appeals from his conviction of trafficking in cocaine, arguing that the trial court erred in denying his motion to suppress. Lane contends that the evidence demands a finding that his consent to search his shoes, in which the contraband was found, was involuntary. We disagree and affirm.

"When an appellate court reviews a trial court's order concerning a motion to suppress evidence, . . . the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous."[1] The trial court's findings based upon conflicting evidence are analogous to a jury verdict, and the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment and must not disturb the trial court's ruling if there is any evidence to support it.[2]

Properly viewed, the evidence shows that on April 7, 2005, Detective Aaron Pritchett with the Lowndes County Sheriff's Office was summoned to a dealership called Valdosta Power Sports in

---

[1] (Footnote omitted.) *State v. Brown*, 278 Ga. App. 457, 459-460 (629 SE2d 123) (2006).

[2] Id. at 460.

reference to a stolen four-wheeler that had been brought into the dealership by Lane and Demetrius Laurent. Pritchett testified that he asked Lane and Laurent to come down to the Sheriff's Office to discuss the matter and to bring the four-wheeler so it could be impounded. The men agreed, and Lane rode together with Laurent in their own vehicle. After impounding the four-wheeler, Pritchett and another detective, Alicia Brantley, walked the men to the Sheriff's Office. Brantley took Laurent into an interview room. Lane asked to use the restroom, and Pritchett accompanied him. Pritchett testified that it is a secure area and it is necessary to maintain eye contact with people who are in there. Lane was not under arrest and had not been searched at that point.

While in the restroom, Pritchett asked to pat Lane down for weapons, and Lane agreed. There was a bulge in Lane's front pocket, and Pritchett asked if he minded pulling out whatever was in his pocket. Lane "said it was no problem," and pulled out a wad of cash, all twenties. They left the restroom, and Pritchett put Lane in an interview room, with the door unlocked. Brantley and Pritchett decided to interview Lane first, and they read him a *Miranda* waiver of rights form,[3] which he signed. Pritchett testified that neither he nor Brantley coerced Lane, threatened him, made him any promises, or gave him any hope of benefit. Neither detective carried a weapon. The form indicated that Lane was willing to talk about the four-wheeler. After speaking to Lane, the detectives went into the other interview room to speak with Laurent. Laurent told the detectives that Lane had ridden the four-wheeler four days earlier and had arranged for Laurent to purchase the vehicle from Lane's cousin, information which Lane had failed to reveal. Lane also denied that the wad of cash was connected to any transaction involving the four-wheeler.

Pritchett testified that when he initially brought Lane into the interview room, Lane was wearing a baseball cap flipped backward. When the detectives returned after speaking with Laurent, Pritchett noticed that Lane had turned the cap around. After Brantley spoke with Lane about the four-wheeler, Pritchett asked him, "Do you mind taking your baseball cap off for me?" Lane said he did not mind, removed his cap, and Pritchett looked inside of it. He found no contraband there. Pritchett next asked Lane whether he minded taking off his shoes. Lane complied. Pritchett saw a bag of cocaine in each shoe, seized the contraband, and turned it over to detectives from the narcotics division.

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

On cross-examination, Pritchett testified when he and Brantley returned to Lane after interviewing Laurent, Lane was being detained for investigative purposes because he had not been entirely forthcoming. Lane was not under arrest, however. According to Pritchett, Lane was at the Sheriff's Office for approximately 30 to 45 minutes.

Lane testified that, while at the dealership, he asked Pritchett if he could leave to pick up his daughter; that Pritchett did not reply but said that Lane needed to come with him to answer some questions; that Pritchett patted him down in the restroom, put him in an interview room, and asked him to write a statement; that Pritchett never asked Lane about his hat but did tell him to take off his shoes; that Lane was in the interview room for 30 to 45 minutes; and that neither Brantley nor Pritchett read him his *Miranda* rights, although he "guess[ed] [he] filled out a paper." On cross-examination, Lane admitted signing the *Miranda* waiver. He testified that he was twenty-seven years old and had completed five years of college. He also admitted that the deputies did not take away his cell phone and that he could have called anyone he wished while they were out of the room.

Based on this evidence, the trial court found that Lane had been advised of his *Miranda* rights when Pritchett asked him to remove his shoes; that Lane consented to the search; and that this was not an invalid continuation of detention. The court thus denied the motion to suppress. The case proceeded to a bench trial on stipulated facts, with Lane reserving objections to the court's ruling on the motion to suppress.

On appeal, Lane argues that his consent was the product of a wrongful detention. While admitting that Pritchett had a valid, articulable suspicion of criminal activity regarding the four-wheeler and validly questioned him regarding that vehicle, Lane asserts that once the detective had ceased his inquiry into the four-wheeler, he could not legally detain Lane any longer. We disagree. Once the detective had a reasonable suspicion of criminal wrongdoing, he was permitted to detain Lane to maintain the status quo while obtaining more information.[4] Pritchett testified that his suspicions were raised due to Lane's odd behavior in turning his cap around and carrying a wad of cash, and that based on his training, knowledge and experience in interviewing people, Pritchett thought Lane might be hiding

---

[4] *Buck v. State*, 239 Ga. App. 828, 830 (522 SE2d 252) (1999).

something in his shoes. Under these circumstances, Pritchett had an articulable suspicion to expand or extend the scope of inquiry and detention.[5]

The only remaining issue is the validity of Lane's consent to search his shoes. A valid consent during a lawful detention eliminates the need for either probable cause or a search warrant.[6] "In a consent search, the burden is upon the state to demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances."[7] In examining the totality of the circumstances, the trial court may consider such factors as "the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused."[8] No single factor controls, and confinement alone does not render consent involuntary.[9]

Here, the evidence shows that Lane was twenty-seven years old and had attended five years of college. He was advised of his constitutional rights and never asked to speak with an attorney. He was permitted to keep his cell phone. The detectives who spoke to Lane were unarmed, and he was "in custody" no more than 30 to 45 minutes. Lane was never physically restrained or threatened. The trial court found as a fact that Lane consented to the search of his shoes. "We must accept the trial court's ruling at a suppression hearing as to the credibility of an officer's testimony regarding a defendant's consent to a search, unless that ruling is clearly erroneous."[10] The evidence supports the trial court's findings, and the court did not err in denying Lane's motion to suppress.[11]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 11, 2007 — ■

*Nicola M. Bajalia*, for appellant.

---

[5] See, e.g., *Almond v. State*, 242 Ga. App. 650, 652 (1) (530 SE2d 750) (2000).

[6] See *Eaves v. State of Ga.*, 236 Ga. App. 279, 280 (2) (511 SE2d 621) (1999).

[7] (Citation and punctuation omitted.) *Butler v. State*, 272 Ga. App. 557, 558 (612 SE2d 865) (2005).

[8] (Citation omitted.) *Martinez v. State*, 239 Ga. App. 662, 663 (522 SE2d 53) (1999). Accord *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997).

[9] *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982).

[10] (Citation and punctuation omitted.) *Lindsey v. State*, 247 Ga. App. 166, 169 (1) (543 SE2d 117) (2000).

[11] See *Buck*, supra at 831.

*J. David Miller, District Attorney, Robert T. Gilchrist, Assistant District Attorney*, for appellee.