### A08A0009. MARTIN v. THE STATE.
(662 SE2d 185)

RUFFIN, Presiding Judge.

James Lonnie Martin was found guilty of possessing marijuana, possessing methamphetamine, obstructing a police officer, and public drunkenness. He appeals: challenging the sufficiency of the evidence as to the charges of obstructing a police officer and public drunkenness; arguing that the trial court erred in denying his motion to suppress and in admitting evidence of a prior conviction; and asserting that he received ineffective assistance of counsel. For reasons that follow, we affirm.

1. In reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a manner most favorable to uphold the trial court's findings and judgment.[1] We accept the trial court's factual findings if there is any evidence to support them, and we will not overturn its credibility determinations unless clearly erroneous.[2] Viewed in this manner, the record shows that in the early morning hours of January 15, 2004, Deputy Weaver of the Cherokee County Sheriff's Office responded to a noise complaint regarding an individual in a gray truck driving up and down a street. When Deputy Weaver arrived at the street, he could hear "extremely loud" music coming from a gray truck parked in a wooded lot. There was no

---

[3] *Salazar v. State*, 256 Ga. App. 50 (567 SE2d 706) (2002). Accord *Slmbey*, supra.

[1] See *Smith v. State*, 277 Ga. App. 81 (625 SE2d 497) (2005).

[2] See id.

house or mailbox on the lot, but there were four houses within approximately 100 yards of the truck. Deputy Weaver approached the vehicle and found Martin sitting in the driver's seat with the door ajar, drinking a beer. The vehicle's engine was not running. Martin was slurring his speech, and Deputy Weaver believed him to be "very intoxicated." Deputy Weaver could see a 12-pack of beer on the seat next to Martin. In response to a request by Deputy Weaver, Martin turned down the volume of the radio, but refused to give the officer his driver's license.

Deputy Weaver went to his vehicle and called his supervisor, Sergeant Hite. Martin raised the volume of his radio again. When Sergeant Hite arrived, the two officers returned to Martin's vehicle and asked him for identification. Martin questioned the officers, stating that he did not need to provide identification because he was on his own land. Martin was drinking a beer, and Sergeant Hite, who was three or four feet away from the vehicle, could smell alcohol. Sergeant Hite asked Martin to exit his vehicle, but he initially refused. When Martin finally exited the vehicle, he had a beer can in his right hand and his left hand formed a fist. Martin, using profanity, threatened to attack Sergeant Hite. After repeatedly telling Martin to put down the beer can, Sergeant Hite knocked it out of Martin's hand and forced him against the vehicle; Deputy Weaver handcuffed Martin.

The officers located Martin's identification and learned that he had an outstanding warrant. He was placed under arrest, and his vehicle was searched and then towed. Marijuana and methamphetamine were found in his vehicle, as well as burned forceps with marijuana in the ashtray and two scales.

Martin contends that he was unlawfully detained and arrested, and that his vehicle was unlawfully seized and searched. We disagree.

(a) In Georgia, there are three tiers of police-citizen encounters: "police-citizen communications involving no coercion or detention; brief seizures that must be supported by reasonable suspicion; and arrests that must be supported by probable cause."[3] Martin argues that his initial contact with Deputy Weaver was a second-tier encounter, and that once he turned down his radio, the basis for the encounter "evaporated." Martin contends that he was then illegally detained because Deputy Weaver commanded him to stay where he was while awaiting Sergeant Hite's arrival.

---

[3]  (Punctuation omitted.) *Keller v. State*, 286 Ga. App. 292, 296 (3) (648 SE2d 714) (2007).

Deputy Weaver's initial contact with Martin was a first-tier encounter.[4] " '[T]he actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop.' "[5] And, as part of his investigation of the noise complaint, Deputy Weaver was entitled to approach the vehicle and initiate a first-tier encounter, even on private property.[6]

The State concedes, and we agree, that the contact became a second-tier encounter when Deputy Weaver instructed Martin to remain where he was and called for assistance. A second-tier encounter requires reasonable, articulable suspicion of criminal activity.[7] Here, Deputy Weaver had reasonable, articulable suspicion that Martin had caused a noise violation, as there was loud music coming from Martin's vehicle and the vehicle matched the description of the vehicle about which a complaint had been registered.[8] Martin's refusal to provide identification added another basis for the officer's suspicion.[9] Additionally, Deputy Weaver's personal observation of "extremely loud" music, Martin's apparently intoxicated condition, and the 12-pack of beer in the vehicle were sufficient to support reasonable suspicion of both a noise violation and public drunkenness.[10] We thus conclude that Martin was not illegally detained.[11]

(b) Martin's argument that he was unlawfully arrested for public drunkenness and obstruction of a police officer is similarly unavailing. When determining whether probable cause for an arrest exists, we consider the totality of the circumstances.[12] Probable cause does not require certainty on the part of the officer that an offense was committed, but merely a probability.[13] Public drunkenness is defined as

---

[4] See *Chapman v. State*, 279 Ga. App. 200, 202 (1) (630 SE2d 810) (2006); *Carrera v. State*, 261 Ga. App. 832, 833-834 (584 SE2d 2) (2003).

[5] *Pruitt v. State*, 263 Ga. App. 814, 817 (1) (589 SE2d 591) (2003).

[6] See *Carrera*, supra; *Mauge v. State*, 279 Ga. App. 36, 37-38 (630 SE2d 174) (2006).

[7] See *State v. Robinson*, 278 Ga. App. 511, 513-514 (629 SE2d 509) (2006).

[8] See *Sims v. State*, 258 Ga. App. 662, 663 (574 SE2d 879) (2002); see generally *Lester v. State*, 287 Ga. App. 363, 364-365 (651 SE2d 766) (2007) (officer had reasonable, articulable suspicion of criminal activity, justifying brief detention, when he was able to corroborate details given to police dispatcher by citizen).

[9] See *Sims*, supra.

[10] See *State v. Bingham*, 283 Ga. App. 468, 471 (641 SE2d 663) (2007).

[11] See *Sims*, supra; *Hendrix v. State*, 273 Ga. App. 792, 794 (1) (616 SE2d 127) (2005).

[12] See *Murphy v. State*, 286 Ga. App. 447, 449 (649 SE2d 565) (2007).

[13] See id.

> appear[ing] in an intoxicated condition in any public place or within the curtilage of any private residence not his own other than by invitation of the owner or lawful occupant, which condition is made manifest by boisterousness, by indecent condition or act, or by vulgar, profane, loud, or unbecoming language.[14]

A public place includes "any place where the conduct involved may reasonably be expected to be viewed by people other than members of the actor's family or household."[15] We have held that officers had probable cause to arrest a man for public drunkenness when they saw him in his own yard screaming and cursing.[16] Here, Martin was visible, and his music audible, to the officers from the road. And loudly playing a car radio in the early morning hours and quarreling with police officers is sufficient to constitute boisterousness for purposes of this statute.[17] Thus, we find that there was probable cause to support Martin's arrest for public drunkenness.[18] Moreover, pretermitting whether Martin's questioning of the police regarding producing his driver's license constituted a refusal to produce one, once Martin refused to exit his vehicle and physically and verbally threatened Sergeant Hite, the officers had probable cause to arrest him for obstructing a police officer.[19]

(c) Martin challenges the seizure and search of his vehicle, arguing that there was no reason for the vehicle to be impounded. But Martin's vehicle was validly searched incident to a custodial arrest, and the marijuana and methamphetamine were found as a result of that search.[20] Accordingly, we need not reach the impoundment issue.[21] Based on the foregoing, we conclude that the trial court did not err in denying Martin's motion to suppress.

2. Martin contends that there was insufficient evidence to support his convictions for public drunkenness and obstructing an officer. In evaluating the sufficiency of the evidence, our standard of review is "whether a rational trier of fact could have found the

---

[14] OCGA § 16-11-41 (a).
[15] OCGA § 16-1-3 (15).
[16] See *Ridley v. State*, 176 Ga. App. 669, 670 (337 SE2d 382) (1985).
[17] See *Moore v. State*, 133 Ga. App. 28, 29 (209 SE2d 662) (1974).
[18] See *Williams v. State*, 228 Ga. App. 698, 700-701 (2) (492 SE2d 708) (1997).
[19] See *State v. Stafford*, 288 Ga. App. 309, 315 (2) (653 SE2d 750) (2007); *Gillison v. State*, 254 Ga. App. 232, 232-233 (1) (561 SE2d 879) (2002).
[20] See *Boone v. State*, 282 Ga. App. 67, 71 (2) (637 SE2d 795) (2006).
[21] See id.; *State v. Heredia*, 252 Ga. App. 89, 90 (3) (555 SE2d 91) (2001).

defendant guilty beyond a reasonable doubt. We do not resolve conflicts in the testimony or weigh evidence."[22]

(a) Martin argues that he could not be found guilty of public drunkenness because he was on private property that no rational trier of fact could have found to be a public place. But as we stated in Division 1, public drunkenness may occur on private property — even at one's own residence — if the conduct "may reasonably be expected to be viewed by people other than members of the actor's family or household."[23] There was evidence from which the jury could find that Martin's conduct, including playing loud music and confronting the officers in a profane and "belligerent" manner, was noticeable to others in the area. Deputy Weaver testified that he could hear Martin's radio from the street before entering the property. The jury saw photographs of the area where the incident occurred and could judge the proximity of Martin's vehicle to several houses. Sergeant Hite testified that lights came on at one of the houses while the officers were speaking to Martin. Under these circumstances, Martin's challenge to his conviction for public drunkenness provides no basis for reversal.

(b) Martin also contests the sufficiency of the evidence for his conviction for obstructing a police officer. "[A] person who knowingly or willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties" is guilty of obstructing a police officer.[24] And " '[w]hether the actions of a defendant actually had the effect of hindering or impeding the officer is a decision for the trier of fact.' "[25] Martin claims that he "did nothing more than ask one question of each deputy while . . . assert[ing] he was on private property" and that he fully complied with Sergeant Hite's command to exit his vehicle. Martin ignores, however, the officers' testimony that he never produced his driver's license, only exited his vehicle after repeated requests, had one hand clenched in a fist and a beer in the other, was "agitated and aggressive," refused to put down the beer, threatened to fight with Sergeant Hite using "continuous profanity," and splashed beer on the sergeant.[26] Thus, there was sufficient evidence for the jury to find Martin guilty of obstructing a police officer.[27]

---

[22] (Punctuation omitted.) *Reid v. State*, 281 Ga. App. 640, 642 (1) (637 SE2d 62) (2006).
[23] OCGA § 16-1-3 (15); see *Ridley*, supra at 670.
[24] OCGA § 16-10-24; see *Berrian v. State*, 270 Ga. App. 582 (608 SE2d 540) (2004).
[25] *Hall v. State*, 201 Ga. App. 328 (1) (411 SE2d 274) (1991).
[26] See id.; *Owens v. State*, 288 Ga. App. 771, 773 (1) (655 SE2d 244) (2007); *Gillison*, supra.
[27] See *Granville v. State*, 281 Ga. App. 465, 465-466 (1) (636 SE2d 173) (2006).

3. Martin asserts that his trial counsel was ineffective because he failed to present testimony that Martin was on his sister's property with her permission at the time of his arrest. " 'The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense.' "[28] Martin contends that his sister's testimony would have established that he was an invitee on private property and thus could not be arrested for or convicted of public drunkenness. But, based on our holdings in Divisions 1 and 2, even if Martin were on private property with the owner's permission, probable cause still would have existed for the officers to arrest him for public drunkenness and there would have been sufficient evidence for the jury to convict him. Martin has therefore not shown any prejudice resulting from trial counsel's failure to introduce this evidence, and his claim of ineffective assistance fails.[29]

4. Martin argues that the trial court erred in admitting as a similar transaction a prior conviction for possessing methamphetamine. We review the trial court's decision to admit similar transaction evidence for abuse of discretion.[30] Similar transaction evidence is admissible if

(1) it is introduced for a proper purpose, (2) sufficient evidence shows that the accused committed the independent offense, and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter.[31]

Martin contends that his prior conviction was not sufficiently similar to the crime charged here because it was "nothing more than the same type of drug in the same county."

We conclude, however, that there was a sufficient similarity between the crime charged and the similar transaction because both involved Martin's possession of methamphetamine while engaged in disorderly conduct.[32] Here, Martin denied knowledge of the methamphetamine, which was found on scales in his vehicle. Martin testified at trial that he had recently purchased the vehicle, the scales were in

---

[28] *Starks v. State*, 283 Ga. 164, 167 (6) (a) (656 SE2d 518) (2008).

[29] See *Moore v. State*, 242 Ga. App. 249, 252-253 (1) (c) (529 SE2d 381) (2000) (failure to call witness not ineffective assistance where "there is no reasonable probability that the jury would have found [defendant] not guilty if [the witness] had testified at trial").

[30] See *Sherrer v. State*, 289 Ga. App. 156, 157 (1) (656 SE2d 258) (2008).

[31] *Judkins v. State*, 282 Ga. 580, 582 (3) (652 SE2d 537) (2007).

[32] See *Sherrer*, supra at 158 (1) (a); *Jackson v. State*, 284 Ga. App. 619, 623 (3) (644 SE2d 491) (2007).

the vehicle when he purchased it, and he did not know the purpose of the scales. The State introduced evidence that in June 1999, a Cherokee County officer responding to a disorderly person call found Martin and several other individuals engaged in an altercation. Upon searching Martin, the officer found a plastic bag containing methamphetamine in his pocket. In response to the officer's inquiry as to how much methamphetamine he consumed in a day, Martin replied, "all that he could get a hold [sic] of." As the two drug offenses were similar, and evidence of the similar transaction was relevant to Martin's intent and bent of mind to possess methamphetamine, the trial court did not abuse its discretion in admitting the similar transaction evidence.[33]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED MAY 2, 2008.

*Thomas J. Bowers III*, for appellant.

*Garry T. Moss, District Attorney, Sarah M. Santander, Assistant District Attorney*, for appellee.

---

[33] See *Grier v. State*, 273 Ga. App. 517, 519 (2) (615 SE2d 586) (2005).