## A08A1208. ROBINSON v. THE STATE.

(670 SE2d 837)

ADAMS, Judge.

Gregory Mark Robinson was charged with one count of possession of methamphetamine and one count of possession of hydrocodone. After Robinson waived his right to a jury trial and stipulated to the facts, the trial judge found him guilty on both charges. As his sole ground on appeal, Robinson asserts that the trial court erred in denying his motion to suppress.

In reviewing a trial court's denial of a motion to suppress, this Court defers to the trial court's findings of disputed facts but reviews de novo the court's application of the law to the undisputed facts. *Petty v. State*, 283 Ga. 268, 269 (658 SE2d 599) (2008); *State v. Nash*, 279 Ga. 646, 648 (619 SE2d 684) (2005). Here the record shows that on February 23, 2007, Officer E. P. Garrett of the Cobb County Police Department responded to a report of a fight between two brothers at a mobile home park. Christopher Brown, one of the brothers involved in the fight, left the scene before police arrived. Garrett was familiar with Brown and knew that he liked to hang out at a pond in back of the trailer park. Brown was not there when police investigated, but Garrett saw a 1995 Toyota Camry, with two people inside, parked next to the pond. The officers approached the car, thinking the occupants might be waiting to meet Brown. Robinson was in the driver's seat and Kimberly Reeves was in the passenger seat. Police later determined that the car belonged to Reeves's boss. Garrett asked them if they had seen Brown and explained why they were looking for him. Reeves said that she was Brown's cousin and that Robinson and she had been at the trailer when the fight occurred, but they left to avoid the commotion.

Garrett said that while talking with Reeves, he noticed that she "was extremely fidgety, was stuttering when she talked," and "wouldn't make eye contact" with any of the officers. Reeves's behavior led Garrett to believe that she was under the influence of drugs because he did not smell alcohol on her breath. Garrett based his opinion on his "mandate" training regarding how to look for signs that people may be under the influence, and four years of experience in the field, dealing with more than fifty drug cases. He stated that there was "a big difference" between people who are nervous strictly because they are dealing with police and people "who are high on some type of drug and/or alcohol. It's very distinguishable." Although he could not explain the difference "without you being out there and seeing the different types of people," he said that he could tell from the way Reeves was acting, i.e., she "wouldn't make eye contact with us at all, wouldn't look at us, very fidgety, nervous as if she was on some type of drug or

alcohol."

Garrett then asked Reeves if there were any drugs in the car, and when she said, "no," he asked for permission to search. Reeves consented.[1] At this point, police had been talking to Reeves and Robinson for approximately five to ten minutes, and the two were not free to leave. When the officers got Reeves out of the car, she leaned up against the car, and then just fell down. Garrett said she could barely stand up at this point and was barefoot on a cold day, so the officers placed her in the back of a police car. Robinson was also removed from the car, patted down for weapons and placed in the back of a police car. Garrett stated that they probably asked for identification and ran a check on them prior to the search.

During the search police found a black bag in the passenger floorboard containing several butane lighters, a crack pipe and a marijuana pipe, along with two white pills that were later identified as hydrocodone. The officers asked Reeves and Robinson about the bag. Reeves said that the bag did not belong to her, but Robinson admitted that the bag was his. The officers took Robinson out of the patrol car, and a search of the seat where he had been sitting turned up a plastic bag containing a white, powdery substance later identified as methamphetamine. Although Robinson denied that the drugs were his, police had searched the patrol car earlier that evening, following standard protocol, and no one else had been in the back of the car in the interim.

Robinson argued that the evidence obtained from the search should be suppressed because the detention leading to the search was based on nothing more than Reeves's display of nervousness, which he contends is insufficient to provide reasonable articulable suspicion to support their further detention. The trial court agreed with Robinson that the officers' further detention required that the officers have a reasonable articulable suspicion of criminal activity. But the court found such reasonable suspicion in Garrett's testimony that he believed Reeves was under the influence of drugs based upon her behavior and his training and experience.

1. "In Georgia, there are three tiers of police-citizen encounters: 'police-citizen communications involving no coercion or detention; brief seizures that must be supported by reasonable suspicion; and arrests that must be supported by probable cause.'" (Footnote omitted.) *Martin v. State*, 291 Ga. App. 363, 364 (1) (a) (662 SE2d 185) (2008).

---

[1] Despite the evidence that Reeves may have been under the influence of drugs at the time she gave her consent to search, Robinson's trial counsel waived any argument in this regard and stipulated that consent was given for the search.

In a first-tier encounter, police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter. A request to search during a first-tier encounter does not require articulable suspicion.

(Punctuation and footnotes omitted.) *Bryant v. State*, 288 Ga. App. 863, 866-867 (1) (a) (655 SE2d 707) (2007).

Here, the officers' approach to the car and the questions they posed to Reeves and Robinson were within the confines of a first-tier encounter. This would include the question of whether Reeves had used drugs and the request to search. It would have been legal for the officers to have approached Reeves and Robinson and ask them in the first instance about drugs and request consent to search. *White v. State*, 267 Ga. App. 200, 202 (2) (598 SE2d 904) (2004). The fact that the officers switched topics from questioning Reeves about Brown to questioning her own behavior does not affect this analysis. Cf. *Hughes v. State*, 293 Ga. App. 404, 406 (2) (667 SE2d 163) (2008) (after second-tier traffic stop completed and de-escalated into first tier, police free to question and ask for consent); *Hayes v. State*, 292 Ga. App. 724, 728 (2), 730 (2) (d) (665 SE2d 422) (2008) (questioning on topics unrelated to constitutional second-tier traffic stop permissible so long as they do not unduly prolong detention). Accordingly, no articulable suspicion was required to make those inquiries or to ask for Reeves's consent to search. And, indeed, Robinson's trial counsel stipulated to the validity of Reeves's consent. Moreover, a valid search pursuant to Reeves's consent did not violate Robinson's rights. See *State v. Menezes*, 286 Ga. App. 280, 283-284 (2) (648 SE2d 741) (2007).

2. Police next asked both Reeves and Robinson to step out of the car. Reeves was unable to stand and fell down. The officers patted Robinson down, ran their driver's licenses[2] and put both into the back of separate patrol cars while they conducted their search. We agree that these actions changed the tenor of the situation into a second-tier encounter requiring reasonable articulable suspicion to detain Robinson, because at that point, as Garrett testified, he was not free to go.

Robinson is correct that Georgia courts have held as a matter of law that nervousness alone is not enough to create a reasonable

---

[2] We note that this Court has held that it is reasonable for officers to run license checks on motorists and passengers for purposes of officer safety. *Chang v. State*, 270 Ga. App. 814, 815-816 (608 SE2d 283) (2004).

suspicion of criminal activity. *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002); *State v. Kwiatkowski*, 238 Ga. App. 390, 393 (519 SE2d 43) (1999). But Garrett testified that Reeves's behavior went beyond mere nervousness in dealing with police to behavior that raised the suspicion that she was under the influence of an intoxicant. Although he termed her behavior nervous and fidgety, the gist of his testimony was that she appeared to be under the influence of drugs. "While [Reeves's] conduct may be susceptible to an innocent explanation, [according to the trooper's training and experience] it is also consistent with illegal activity." (Citation and punctuation omitted.) *Giles v. State*, 284 Ga. App. 1, 4 (1) (642 SE2d 921) (2007). In addition, when Reeves exited the vehicle, she was unable to stand, thus lending support to the officers' suspicions.[3] We find, therefore, that the police could lawfully detain both Reeves and Robinson to maintain the status quo while obtaining more information as to the possible use of illegal drugs in the car. See *Lane v. State*, 287 Ga. App. 503, 505 (651 SE2d 798) (2007).

*Judgment affirmed. Smith, P. J., concurs. Mikell, J., concurs specially.*

MIKELL, Judge, concurring specially.

Although I fully concur in all that is written and in the judgment, I write separately to address the language in the second paragraph of the opinion. That language precisely reflects the law in Georgia today, but seems to me unfortunate and I respectfully urge our Supreme Court to reconsider numerous precedents, albeit venerable.

The majority correctly states that "[i]n reviewing a trial court's denial of a motion to suppress, this Court defers to the trial court's findings of disputed facts but reviews de novo the court's application of the law to the undisputed facts." *Petty v. State*, 283 Ga. 268, 269 (658 SE2d 599) (2008); *State v. Nash*, 279 Ga. 646, 648 (619 SE2d 684) (2005). But, the facts are never "undisputed" unless stipulated. Even if only one witness testifies and testifies unambiguously, credibility is nonetheless in issue. At a hearing on a motion to suppress, the trial judge sits as the trier of fact. And Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness.

---

[3] Although the exact order of these events is unclear, Fourth Amendment "cases are typically very fact specific[, and] [e]ven when only one witness testifies, as in the case at bar, the testimony can be ambiguous." (Footnote omitted.) *Hayes v. State*, 292 Ga. App. at 729-730 (2) (c). "Any ambiguity in the evidence must be resolved in favor of the judgment...." (Citation omitted.) Id. at 730, n. 34.

Saying that appellate courts in Georgia should "review de novo the court's application of law to the undisputed facts" allows appellate courts, relying on a cold record, to reverse a trial judge who has seen the demeanor of the witnesses as they testified. Such reversals are especially tempting when, based on the cold record, we disagree with the trial court or, when the motion is granted, we suspect "home cooking." But the trial judge's ability to grant a motion to suppress, even when the testimony appears from the record to have been indisputably in favor of the state, is one more protection for a citizen's rights. We should not imperil those rights by maintaining the legal fiction that the facts are ever "undisputed." If the parties stipulate to the facts, then, of course, the credibility of a testifying witness is not an issue, and de novo review would be appropriate.

The leading case adopting the de novo standard of review is *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). It could be argued that the discussion of de novo review in *Vansant* was obiter dicta. The result of the Supreme Court's decision was merely to affirm the trial court's decision on the facts, facts which are, as argued above, always disputed. *Vansant* relied on a footnote in *State v. Davis*, 261 Ga. 225, 226, n. 1 (404 SE2d 100) (1991), a special concurrence in *State v. McBride*, 261 Ga. 60, 65 (401 SE2d 484) (1991) (Hunt, J., concurring specially), and on two opinions of the United States Court of Appeals for the Eleventh Circuit. See *Vansant*, supra. There was no discussion of the ancient Georgia doctrine that the credibility of a witness or witnesses is always an issue for the trier of fact.

The opinion, on whose footnote *Vansant* relied, *State v. Davis*, supra, is itself troublesome. The *Davis* case stated that "*[u]nless clearly erroneous*, the trial court's ruling on disputed facts . . . must be accepted on appeal." (Citation, punctuation and footnote omitted; emphasis supplied.) Id. at 226. Again as with the "de novo" review rule, the "clearly erroneous" standard of review allows an appellate court, based on a cold record, to second guess the trier of fact.

The *Davis* case asserted the "clearly erroneous" standard of review based on *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982), which cites *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975). *Woodruff* in turn cites *Lego v. Twomey*, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972), *United States v. Watson*, 469 F2d 362 (5th Cir. 1972) (reciting "clearly erroneous" standard without citation), and *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974). *Johnson* had also relied on *Lego v. Twomey* and *United States v. Watson*. Thus is the origin of the "clearly erroneous" rule in Georgia. However, *Lego v. Twomey*, upon which our Supreme Court relied, holds only that the standard for determining the admissibility of

confessions may be merely the preponderance of the evidence; the words "clearly erroneous" do not appear in the opinion. Our Supreme Court's reliance on *Lego* for the "clearly erroneous" standard is mystifying given that *Lego* makes no mention of this rule.

The rule in Georgia should be that an appellate court in Georgia can reverse a trial court's grant or denial of a motion to suppress only when: (1) the record lacks any evidence to support the finding below; or (2) the record manifestly shows that the trial court ruled on the facts while under a mistaken view of the law.

My argument that the standard of appellate review should be "any evidence" is supported by the principle, well established in civil cases in Georgia, that a trial judge's findings of fact can never be "clearly erroneous" when there is "any evidence" to support them. E.g., *Blair v. Bishop*, 290 Ga. App. 721, 722 (660 SE2d 35) (2008). But in criminal cases the rule may be significantly different. See, e.g., *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998) ("an appellate court must adopt the trial court's findings of fact unless they are clearly erroneous *and* not supported by any evidence") (citations omitted; emphasis supplied).

I hope that our Supreme Court will reconsider the law in this area and assert that de novo review is appropriate only when the facts are stipulated and not presented by testimony, and that the standard of review in civil and criminal cases for findings based on testimonial evidence is "any evidence."

DECIDED NOVEMBER 26, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008 —

*Steven A. Cook*, for appellant.
*Patrick H. Head, District Attorney, John R. Edwards, Assistant District Attorney*, for appellee.