A09A0997. HANDY v. THE STATE.
(680 SE2d 646)

MIKELL, Judge.

After the trial court denied Melissa Sue Handy's motion to suppress the results of her urine test, she agreed to a bench trial on

stipulated facts. The trial court found her guilty of possession of methamphetamine and sentenced her as a first offender to four years on probation. On appeal from her conviction, Handy contends that the trial court erred in denying her motion to suppress because her consent to the drug test was coerced. As the trial court concluded otherwise based on findings of fact that are supported by the evidence, we disagree with Handy and affirm the trial court.

At a hearing on a motion to suppress, the trial judge sits as the trier of fact.[1] The judge "hears the evidence, and his findings are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them."[2] Furthermore, "Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness."[3] "Thus, on appellate review of a trial court's order on a motion to suppress evidence, we never second-guess the trial court's factual findings where they are based on testimonial evidence."[4]

Viewed in the light most favorable to the trial court's judgment, the evidence adduced at the suppression hearing shows that Deeanna Jarrett and John New, Cherokee County sheriff's officers assigned to the Cherokee Multi-Agency Narcotics Squad ("CMANS"), received a tip from the Department of Family and Children Services ("DFACS") that Handy and her husband were using and selling methamphetamine while Handy was providing child care services in her home. The CMANS agents, accompanied by Georgia Bureau of Investigation ("GBI") special agent Ken Howard, arrived at Handy's mobile home and knocked on the door. When Handy opened it, the CMANS agents identified themselves and informed Handy that the purpose of the visit was to investigate a report of drug activity. The agents requested entry into the home and consent to search. Handy consented to a search of the residence. Jarrett and New described Handy as friendly and cooperative. During the search, in which Howard assisted, numerous methamphetamine smoking devices were found in the bedroom along with baggies laced with drug residue. Handy's daughter, who was seven or

---

[1] *Jones v. State*, 200 Ga. App. 519 (1) (408 SE2d 823) (1991) (whole court).

[2] (Citation and punctuation omitted.) Id.

[3] *Robinson v. State*, 295 Ga. App. 136, 139 (670 SE2d 837) (2008) (Mikell, J., concurring specially). Accord *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) ("[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony") (citation and footnote omitted). Compare *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (de novo review proper where trial court accepted officer's version of events but applied incorrect standard of law).

[4] (Footnote omitted.) *State v. Guyton*, 295 Ga. App. 786, 787 (673 SE2d 290) (2009).

eight years old, was at home, but no other children were there at the time.

Following the discovery of the contraband, Jarrett asked Handy for an interview, and she consented. Jarrett read Handy her *Miranda* rights, and Handy signed a waiver of rights form, which was introduced into evidence. During the interview, in which Howard participated, Handy admitted recently smoking methamphetamine. Jarrett asked Handy for a urine sample, and Handy consented. The sample tested positive for methamphetamine. Handy never requested an attorney during the course of the interview.

While Handy was being interviewed, New contacted James Dorsey, the child protective services worker with DFACS who had phoned in the tip, and reported that contraband had been found at the residence and that Handy would be arrested. Dorsey arrived and arranged for a relative to take custody of Handy's daughter.

Handy testified that Dorsey had been to her home earlier in the day and had told her that she would lose her daughter if she did not cooperate with "everything." However, Handy admitted that the CMANS agents never told her that she had to cooperate, either during the interview or by giving a urine sample. She testified that the agents never threatened or coerced her in any way.

Dorsey testified at the hearing as follows. Several days prior to the search in question, he received a report that Handy and her husband were using and selling drugs and that Handy was using drugs while providing day care for young children. Pursuant to DFACS protocol, Dorsey reported this information to CMANS and went to Handy's home, where he found Handy keeping three young children. Handy denied using drugs, and Dorsey explained to her that she would be required to undergo a drug test. A female worker came and performed the drug screen, which Handy failed. Dorsey required Handy to contact the children's parents to pick them up. Dorsey received a report a few days later that Handy's child was coming home, so he returned to the home to arrange a safety plan for Handy's child. Dorsey left at that time because no one was home but then received the call from CMANS before he got back to the office. Dorsey then arranged for a relative to take Handy's daughter.

Dorsey further testified that he never threatened Handy that her child would be taken away if she did not cooperate. Dorsey explained that he indicated to Handy that as part of the safety plan, she needed to cooperate with DFACS until its investigation was completed. Dorsey told her that if the drug screen was positive, DFACS would have to find a safety resource for her daughter. In response to questioning by the trial court, Dorsey testified that he never made a statement to the effect that Handy was required to "cooperate with everything that was going on" that day.

The trial court announced its ruling at the conclusion of the hearing. The court expressly discredited Handy's testimony that she believed that she was required to cooperate with the police. The court found that Handy had voluntarily consented to the search of her residence by the CMANS agents and that Dorsey's statement that she had to cooperate with DFACS in order to comply with a safety plan did not affect Handy's consent to the subsequent police search. The court further found that statements Handy made during the interview with CMANS were freely and voluntarily given. Accordingly, the trial court denied her motion to suppress her urine test results and her statements.

> It is well settled that a valid consent to a search eliminates the need for either probable cause or a search warrant. In order to justify a warrantless search on the grounds of consent, the [s]tate has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances.[5]

Whether consent was voluntarily given is a question of fact for the trial court.[6] In the case at bar, the trial court did not err in finding that Handy freely and voluntarily consented to the search of her premises, to a drug test, and to an interview. Handy was advised of her constitutional rights, and she waived them. Moreover, there is no evidence of coercive police tactics.[7] Handy testified that the CMANS agents did not threaten or coerce her, and did not inform her that she had to cooperate. The agents described Handy as friendly and cooperative. In addition, the trial court, sitting as the trier of fact, was authorized to disbelieve Handy's testimony that the DFACS worker told her that she was required to cooperate with the police in order to retain custody of her child.[8] As the evidence supports the finding that Handy's consent was not the product of coercion, we affirm the denial of her motion to suppress.[9]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 30, 2009.

---

[5] (Citations and punctuation omitted.) *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009). Accord *Jones*, supra. See also *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982) (listing factors to be considered in assessing the totality of the circumstances).

[6] *Pollard v. State*, 265 Ga. App. 749, 751 (2) (595 SE2d 574) (2004).

[7] See *Brooks*, supra; *Dean*, supra.

[8] See *Tate*, supra.

[9] See *Brooks*, supra; *Pollard*, supra at 752 (2); *Jones*, supra.

*Flint, Connolly & Walker, John F. Connolly*, for appellant.
*Garry T. Moss, District Attorney, Lawton W. Scott, Sara A. Thompson, Assistant District Attorneys*, for appellee.